Thomas M. Stark, J.
In this article 78 proceeding petitioner seeks a judgment reversing and annulling two determinations made by respondent Board of Appeals on December 5, 1968. The first was a grant of a special permit for the erection of an antenna mast or pole by respondent Suffolk Cable Corp. on premises leased by it from respondent Jack Rogers, and the second was a grant of a height variance authorizing a maximum antenna height of 185 feet.
The premises in question are located in an area classified “J” Business 1 District (Neighborhood Business) by the Brookhaven Town Zoning Ordinance and Map. The structure erected on the premises consists of a tall pole or mast upon which is mounted the master'antenna for a community antenna television (CATV) system operated by respondent Suffolk Cable Corp. This particular structure is not an unconditionally or conditionally permitted use in a “ J ” Business 1 District (§ 85-97), and, in addition, structures in such districts are limited in height to 35 feet (§ 85-98).
Section 85-234 of the ordinance provides that public utility buildings or structures (with certain exceptions) shall be permitted in any district when authorized by special permit from the Board of Appeals. It was under this section that respondents sought the special permit upon the ground that the CATV system operated by Suffolk Cable Corp. is a “ public utility ” and that the master antenna mast was a “ public utility structure ’ ’ within the meaning of the zoning ordinance. Although *1052 it did not specifically so find, the Board of Appeals apparently concluded that the master antenna mast was a 11 public utility structure ” for which it could grant a special permit under section 85-234.
Petitioner, who appeared before the Board of Appeals at hearings conducted on November 7, 1968 and November 14, 1968, asserts in this proceeding (as she did before the Board of Appeals) that Suffolk Cable Corp. is not a “ public utility ” nor is the antenna mast a <£ public utility structure” within the meaning of the ordinance, and that the Board of Appeals was, therefore, without authority to grant the special permit under section 85-234.
The ordinance itself contains no definition of either £ £ public utility ” or ££ public utility structure ”.
Practically all local zoning ordinances in this State contain provisions permitting public utility uses to be maintained in various use districts, customarily conditioned upon the granting of special exceptions or special permits by a Board of Appeals. Public utility structures serving the entire community have historically been recognized as reasonable and proper uses in all types of use districts because of technical and engineering requirements peculiar to such structures and the areas served. It does not appear, however, from the research conducted by this court, that the meaning and scope of the term ££ public utility ” as such term is used in local zoning ordinances has been the subject of judicial determination in this State. More particularly, there apparently have been no reported cases concerning the status of CATV companies in regard to local or State laws or regulations affecting the legal rights or obligations of public utility companies.
Accordingly the court’s determination in this proceeding must rest on an analysis of the legal structure of CATV companies, their rights, powers and franchises, any existing public regulation, and their functions and operations as such affect the public interest.
A public utility is defined in Black’s Law Dictionary as ££ A business or service which is engaged in regularly supplying the public with some commodity or service which is of public consequence or need, such as electricity, gas, water, transportation or telephone or telegraph service.”
Since their inception within the last twenty years, CATV companies in New York State have been required to incorporate as telegraph and telephone corporations under the provisions of the Transportation Corporations Law. (1952 Opns. Atty. Gen. 166, Harper v. City of Kingston, 17 Misc 2d 627.) This *1053 requirement is predicated on the- transmission of television signals by wire being a form of telephony or telegraphy.
Section 27 of the Transportation Corporations Law gives telegraph and telephone corporations broad powers to construct their lines and fixtures over or under public highways, and to utilize private lands for their purposes, with the right to condemn such lands if necessary. The section requires however that telegraph and telephone corporations must obtain the permission of city, village or town authorities to use local streets for the construction of its lines.
This latter requirement has resulted in CATV companies having to obtain local ‘‘ franchises ’ ’ when they sought to construct their own coaxial cable system either above or below the public highways. (See New York City Charter, § 362; Town Law, § 64, subd. 7; Village Law, § 89, subd. 39. See, also, Harper v. City of Kingston, supra.)
Where a CATV company, however, did not attempt to lay and utilize its own lines under city streets, but rather leased New York Telephone Company lines for the transmission of its signal, it has been held that no city franchise is required. (City of New York v. Comtel, Inc., 57 Misc 2d 585, affd. 30 A D 2d 1049, affd. 25 N Y 2d 922.)
One test as to the status of CATV companies as public utilities is their regulation by local, State or Federal authorities. The law in this area is still in a state of development. (See comments of Trial Term in City of New York v. Comtel, Inc., supra, p. 616. Also Burton, Cable Television — Tomorrow’s Television — Ready or Not, 41 N. Y. State Bar J., 579, 580.)
In this State the Public Service Commission has been the traditional agency exercising regulatory powers over public utilities. Section 90 of the Public Service Law provides that the regulatory provisions of article 5 of that law shall apply to every telegraph corporation and telephone corporation. The latter terms, as defined in section 2 of the Public Service Law, include companies owning, operating or managing telephone or telegraph lines used in the conduct of the business of affording telephonic or telegraphic communication for hire.
The Public Service Commission has determined that the transmission of television signals by the New York Telephone Company through its own lines for a CATV company is a form of telephony or telegraphy, i.e., a providing of telephonic or telegraphic communications for hire, and thus subject to regulation, but has chosen not to assume any regulatory supervision over CATV companies providing the same service over their own lines. (Matter of New York Tel. Co., 34 P. U. R. 3d 115.)
*1054 In a case where a CATV company leased pole space from the New York Telephone Company for the erection of its own lines, it has been held that the Public Service Commission has no jurisdiction to regulate the relationship between the CATV company and the New York Telephone Company in a dispute over rental rates and extent of service. (Matter of Ceracche TV Corp. v. Public Serv. Comm., 49 Misc 2d 554.)
In a number of opinions, the State Comptroller has advised various municipalities that CATV companies are not subject to the local taxes on utility services imposed by section 186-a of the Tax Law or section 6-640 of the Village Law (13 Opns. St. Comp., 1957, 351; 21 Opns. St. Comp., 1965, 406; 23 Opns. St. Comp., 1967, 708). These opinions are based on the fact that the Public Service Commission has not exercised regulatory jurisdiction over such companies.
It clearly appears to this court that CATV companies incorporated under the Transportation Corporations Law as telegraph and telephone corporations and operating their own transmission lines are at present open to possible regulation by the Public Service Commission under article 5 of the Public Service Law, even though the Public Service Commission has chosen not to subject CATV companies to such regulation.
The Federal Government however has recently begun to exercise certain regulatory authority over CATV companies The Second Report andzOrder, and the Rules of the Federal Communications Commission, as published in the Federal Register, March 17, 1966, set forth rules and regulations for the receipt and distribution of television signals insofar as such distribution affects competition with the television industry and has economic impact upon it. The rules provide for notice to all television stations received in the area and to the Federal Communications Commission before any CATV company may commence or continue to distribute signals. The rules set forth which signals must be distributed, which signals may not be distributed, and, as set forth in subsequent rules, what signals may or must be originated by CATV companies. Regulation of CATV systems by the Federal Communications Commission was sustained in United States v. Southwestern Cable Co. (392 U. S. 157), which upheld the application of the Second Report and Order.
An issue similar to that raised in this proceeding has been considered by the hig’hest court of a sister State. In State of Washington ex rel. Pruzan v. Redman (60 Wn. 2d 521) the local zoning board has granted a conditional use permit for the*erection of a radio transmission station (one-story building *1055 and three 240-foot steel towers) on land zoned for agricultural use, based upon the provision of the ordinance authorizing such permits for ‘1 public utility * * * buildings or structures The question considered by the court was whether the radio station is so impressed with a public interest that it came within the field of public regulation, and, as such, was a public utility within the broad meaning of that term. The court, referring to regulation of radio stations by the Federal Communications Commission, found that although a radio station does not constitute a public utility in the ordinary sense, it is, nevertheless, a public utility in a limited sense impressed with a public interest. The court found no restricting language on the term “ public utility ” as used in the zoning ordinance, and found such term broad enough to give the zoning board jurisdiction to issue the use permit.
A similar finding is justified in the case at bar. CATV companies in New York, as well as radio and television stations, are presently regulated in the public interest by the Federal Communications Commission. As above stated, in this court’s opinion, CATV companies in New York could be regulated as public utility companies under the existing Public Service Law. It is clear that CATV companies are impressed with a public interest and can be classified as public utilities in the broad sense of that term.
Nothing contained in the Brookhaven Town Zoning Ordinance suggests that the term ‘ ‘ public utility buildings or structures ’ ’ is to be narrowly construed. Under this ordinance, a radio or television broadcasting station seeking to erect a transmission tower in a district other than industrial would have to apply for a special permit under section 85-234.
Based on all the foregoing, this court finds that the master antenna mast erected by the respondent Suffolk Cable Corp. is a “ public utility structure ” within the meaning of the Brook-haven Town Zoning Ordinance and that the respondent Board of Appeals acted w?' A its authority in granting the special permit.
In granting such a special permit the Board of Appeals must follow the provisions set forth in section 85-187 of the ordinance. Subdivision B, subsection (2) sets forth the matters which the Board of Appeals must consider in making its determination. Subdivision B, subsection (1) specifically lists four criteria which must be determined by the Board of Appeals before granting a special permit. There is no requirement however as to the manner in which such determinations are to be reported. It must be reasonably assumed that the granting *1056 of the special permit constitutes the determination of the Board of Appeals required by the ordinance. A reading and consideration of the record in this case show ample credible evidence to support the Board of Appeals ’ determination.
The court further finds that upon this record there was no abuse of the hoard’s discretion in granting the height variance.
Accordingly, the petition is denied and the proceeding dismissed.