Frank P. DeLuga, J.
This case was tried by the court without a jury. The plaintiff is engaged in the business of install *550 ing and operating cable television systems within the County of Suffolk. Primarily, the company utilizes existing utility poles and strings its coaxial cable over the existing roadways from the pole to its customers in much the same manner as the delivery of telephone and electric service. As part of its operations, plaintiff is required to obtain permits from the governmental agency that maintains the particular street or highway and pay certain fees for said permits. In this case, plaintiff alleges that the defendants are imposing unjust fees which are not charged to the utility companies and therefore constitutes a 1 ‘ discriminatory practice ” which is unlawful.
By stipulation of counsel, plaintiff seeks to recover the sum of $18,954.70 which allegedly represents fees paid by plaintiff to defendants under protest. The statutory basis for the collection of fees is found in section 136 of the Highway Law which prohibits overhead or underground crossing of county roads “ except under such conditions and regulations as may be prescribed by the county superintendent, notwithstanding any consent or franchise granted by any town ”.
Plaintiff charges that defendants impose only a nominal fee of $10 per mile for a single stretch of road when a utility such as the lighting or telephone company seeks a permit to utilize the county right of way. However, commencing February, 1972, all cable television companies seeking permission to string their overhead cables were charged the sum of $.10 a linear foot in addition to the $10 fee imposed on the lighting and telephone companies. Thus plaintiff alleges, it is compelled to pay fees of $528 per mile as opposed to “ other utilities ” paying only $10 per mile.
Defendants contend that the cablevision [CATV] charges are necessary because of the higher volume of administrative work necessary to check and evaluate the more numerous CATV applications for permits. However, it is a well-settled principle that administrative fees must not discriminate but must bear a reasonable relationship between the fee and administrative costs. Plaintiff contends that as a CATV company it is a public utility and must be treated in the same manner as like members of the same class.
The recently enacted article 28 of the Executive Law dealing with the CATV industry does not explicitly define cable television as a public utility but in a declaration of legislative findings and intent (§ 811), it is clear that the industry is of a public interest nature, requiring State-wide regulation. Mr. Justice Stabk of this, court has declared plaintiff to be a public utility, *551 viz: “It is clear that CATV companies are impressed with a public interest and can be classified as public utilities in the broad sense of that term.” (Stamiski v. Romeo, 62 Misc 2d 1051, 1055).
But the court does not find it necessary to find plaintiff to be a public utility company nor even to apply a kind of cy pres doctrine that plaintiff should be “ similarly situated ” as urged by plaintiff. Instead, it is sufficient to point out that the evidence adduced by defendants fails to establish the necessary reasonable basis for imposing the discriminatory fee. Defendants have failed to show a basis for imposing the much higher fee upon CATV companies, i.e.— additional or different expertise required to process CATV applications and the like. Moreover, the lack of a rational basis is reinforced by the concession that permit fees for underground installations are uniformly imposed on all applicants. Likewise, the construction bonds required of all applicants are imposed in identical amounts regardless of the nature of the applicant. It thus appears that the fees in question are in the nature of a discriminatory tax and designed primarily to operate as a revenue measure. No such authority appears in section 136 of the Highway Law.
It must also be noted that we are dealing here with a public utility whose rate schedules and tariffs are approved or regulated by governmental agencies. It goes without saying that if these discriminatory fees were permitted to stand, plaintiff and all other cablevision companies would necessarily have to apply for rate increases. Thus the ultimate burden would fall on the shoulders of the general public and it would be the consumer, as he usually does, who would suffer. Surely this was not the purpose intended by defendants, who after all, are the servants and not the masters of the people.
Accordingly, the relief requested in the complaint is granted to the extent that the sum of $18,954.70 exceeds the permit fees required to be paid by non-CATV public utilities. Thus, judgment is granted in favor of the plaintiff for the sums paid in excess of the normal fees imposed by defendants upon other public utilities.