George Beisheim, Jr., J.
Petitioners have instituted this article 78 proceeding to annul and .set aside the determination of respondent Zoning Board of Appeals of the Town of Lewisboro denying petitioners’ application for a zoning variance and special permit authorizing the construction, maintenance and operation of a building and tower for alleged interstate communication purposes.
Petitioner, Video Microwave, Inc. (hereinafter called “Video”) is a Massachusetts corporation organized for the purpose of constructing, maintaining and operating a regional system of signal transmission by radio to television broadcasting stations. It is the proposed lessee of the property involved in this proceeding. The petitioner, Stevens Memorial Methodist Church, Inc., is the owner of the property in the Town of Lewisboro proposed to be leased to Video for the purpose hereinafter indicated.
Preliminarily, it should be stated that petitioners, during the oral argument of this matter, withdrew certain objections contained in the affidavit of Charles H. Carson, commercial manager of Video, .as to the completeness of the record before the *799 court when the alleged missing items were produced for the court by either petitioners or respondent. Respondent also withdrew its defense that Video was not doing ¡business within the State of New York.
Specifically, petitioners sought a special permit pursuant to article XVI, section 2 (m), of the Lewisboro Zoning Ordinance, to erect a 340-foot-high microwave relay tower on property designated as part of Lot 1 in .Block 10056 on Sheet 47 on the Tax Map of Lewisboro. The aforesaid property is in an R-2 (2-acre) residential district and consists of approximately 2 acres. Petitoners also requested a variance of article V of the Zoning Ordinance, which limits the use ;of the property in question to single-family homes on 2-acre lots; and an interpretation of, and if necessary, a variance of article IV, section 2 (d .and g), which limits the height of any structure to 45 feet except that flagpoles, aerials and certain other projections are exempted from said height requirement, and from the minimum 40-foot rear yard requirement contained in said section.
The pertinent sections of the zoning ordinance are as follows:
Article XVI, section 2 (m): ‘1 Permit any public utility in any district under such conditions and safeguards as will protect the character of the district.”
Article TV, section 2 (d): “ No building or structure shall be erected to a height exceeding four stories or forty-five feet.”
The decision of the Board of Appeals contained, inter alia, the following findings:
“VMI is in the process o£ designing for future construction a microwave relay system linking New York and Boston, and with spurs to certain other cities, e.g., Albany and Providence. The system is designated to carry, in both directions, television programs for ultimate re-broadcast. The proposed system iteslf [sic], however, is not a broadcast system, but one which is designed for point-to-point transmission of program material between television stations. There will be no direct service to the general public (i.e., the television audience) by means of the proposed system. VMI is a commercial enterprise which is in competition with AT & T for the business of transmitting television programs from the point of their origination to broadcast stations which in turn broadcast the programs to the public. VMI.serves the television industry only, and thus is not a public utility as that term is used in Article XVI (2) (m).”
“The proposed location of the Tower is on a hill so that it will be visible from the many homes located within the immediate area. It cannot be seriously denied that this structure is extremely tall and in the location selected, will be an eyesore, both to the immediate residents who cannot escape looking at it, and to all those within a rather large radius. By its very nature and intended use the tower must be. highly visible. Indeed the requirement for orange and white colors and flashing lights is intended to insure high visibility.
“VMI claimed at the hearing that the site selected was the only practical one in view of its availability, height, location and relation to other radio facility *800 paths. The board has carefully considered this evidence, and the testimony by VMI’s representative that another site in Wilton is technically feasible, and concludes that applicant has not demonstrated that the chosen site is the only feasible one. It is unbelievable that the system could be planned all the way down to the last location needed with no alternative if the chosen site was unavailable.
“ The members of the Board have inspected the proposed site and surrounding area. The general vicinity of the proposed tower is a low-density residential neighborhood consisting of single family homes on plots of two acres or larger with a considerable amount of vacant land. The recently adopted master plan proposes that this area of the Town retain its low-density rural character. The proposed tower will be clearly visible from homes in the area.
“ This tower simply cannot be located at the chosen site without doing visual damage to the neighborhood. It will be an eyesore which cannot be camouflaged, and indeed must, by virtue of its height and purpose be made highly visible.”
It also contained the following “ Conclusion ”:
“The Board notes that the tower is, by virtue of its size and importance, the key part of this installation. Without the tower, the related building and equipment would be useless. The tower can therefore be considered to be the principal structure on the site. As such, it clearly violates the applicable provisions of the Zoning Ordinance.
“ The Board is of the opinion and indeed the applicant has admitted that the tower will have an adverse effect on nearby property. The tower itself will be an eyesore and the flashing lights' a constant annoyance to surrounding residents.
“ The Board is of the opinion that the requested variances are use variances and cannot be granted without an adverse effect on surrounding property. The prroposed [sic] commercial use is not in conformity with the Zoning Ordinance or the master plan. The applicant has not shown undue hardship and has not even attempted to show that the property in question is not suitable for the uses for which it is zoned.
" Since VMI does not in any way directly serve the public, either in the Town of Lewisboro or elsewhere, we have concluded that it is not a public utility as that term is used in Article XVI(2) (m) of the Ordinance. It is thus not eligible for a special permit.
“ In addition, were we to conclude that VMI was a public utility, we would also conclude that we could not issue a permit for the tower under Article XVI, Section 2(m) of the Ordinance, since the character of the district could not be protected by any 'coúditions attached to such a permit.
“The board is of the opinion that the tower proposed by the applicant is clearly not an aerial as that term is used in Article IV Section 2(d). The proposed tower is an independent structure and as such is the principal building proposed for this parcel. It is not exempt from the height limitations of the ordinance.
"For the foregoing reasons, the application must he and is hereby denied both as to the requested variance and alternatively, for a special permit.”
Petitioners contend that the Board of Appeals arrived at the erroneous conclusion that Video is not a public utility, and they argue to the contrary, that Video is a public utility within the scope of article XVI, section 2 (m) of the zoning law. They contend further that the board’s refusal to issue a special permit *801 on the ground that the character of the district could not be protected was an arbitrary and capricious determination unsupported by substantial evidence.
Respondent points out that section III of the ordinance grants to the Board of Appeals the authority to make interpretations of the ordinance. It contends that the board’s interpretation that a corporation which does not directly serve the public is not a public utility within the meaning of article XVI, section 2 (m), was correct and proper. Respondent also maintains that petitioner had no valid claim of hardship for which a variance might be granted since the alleged hardship was not caused by the nature of1 the particular property, but by the alleged need for this particular location in Video’s over-all system. Respondent further argues that there were no safeguards which the Board of Appeals could have prescribed which would have protected the surrounding residential neighborhood from the adverse effects of the proposed 340-foot tower.
In support of its contention that the proposed tower was a “ public utility structure ”, petitioners rely upon the case of Staminski v. Romeo (62 Misc 2d 1051, 1055) where the Supreme Court, 'Suffolk ¡County, upheld a decision of a Board of Appeals which had issued a special permit for a CATV antenna mast, upon the ground that CATV companies which transmit television signals by wire are regulated in the public interest by the Federal Communications Commission and hence 1 ‘ are impressed with a public interest and can be classified as public utilities in the broad sense of that term ”, Petitioners also rely upoa Black Hills Video Corp. v. Federal Communications Comm. (399 F. 2d 65) scad. State of Washington ex rel. Pruzan v. Redman (60 Wn. 2d 521). In the Redman case, the court upheld the Zoning Board’s issuance of a conditional use permit for the erection of a radio transmission station and three 240-foot steel towers on land zoned for agricultural use, on the basis that a radio station is a public utility impressed with a public interest.
Respondent relies upon the definition of a pubic utility contained in Black’s Law Dictionary (3d ed.) at page 1463, to wit: ‘1 Any agency, instrumentality, business industry or service which is used or conducted in such a manner as to- affect the community at large, that is which is not limited or restricted to any particular class of the community.”
Respondent argues that the Staminski case (supra) cited by petitioners is not applicable to the facts of the case at bar since the function of the CATV company is to receive broadcast signals and transmit them to the public by voice while the *802 function of the petitioner Video is to serve the television networks by relaying programs from the point of their origination to various broadcast stations. Respondent contends that Video provides no service to the public and, therefore, does not come within the definition of a public utility prescribed in the Staminski case (62 Misc 2d 1051, 1052): “ A business or service which is engaged in regularly supplying the public with some commodity or service which is of public consequence or need, such as electricity, gas, water, transportation or telephone or telegraph service ” (emphasis added).
Respondent’s position is weakened by the fact that the Town of Lewisboro Zoning Board of Appeals, in a prior decision handed down on September 14,1967, granted a special permit to the American Telephone and Telegraph. Company to erect a 125-foot tower whose application had been made 1 ‘ for a permit to a public utility under Article XVI, Section 2 (m) ” of the Lewisboro Zoning Ordinance. This determination, of course, would not be conclusive on the present board since there had been no opposition to the American Telephone and Telegraph Company application and, moreover, if the board had erred in 1967 the present board would not be obligated to perpetuate such error.
This court believes that whether or not Video may be a public utility in the “ broad sense of that term ” is not the determining factor in the case at bar. Those public utilities which are essential to the public health, safety and welfare enjoy a favored position in relation to zoning regulations. (Matter of Long Is. Water Corp. v. Michaelis, 28 A D 2d 887; Matter of Long Is. Light. Co. v. Horn, 23 A D 2d 583; Matter of Long Is. Light. Co. v. City of Long Beach, 280 App. Div. 823, affd. 305 N. Y. 880; Matter of Consolidated Edison Co. v. Village of Briarcliff Manor, 208 Misc. 295; Long Is. Light. Co. v. Village of Old Brookville, 72 N. Y. S. 2d 718, affd. 273 App. Div. 856, affd. 298 N. Y. 569; Wallerstein v. Westchester Joint Water Works, 166 Misc. 34; Municipal Gas Co. v. Nolan, 121 Misc. 606, affd. 208 App. Div. 753.)
In all of the cases hereinbefore cited, the decision of a zoning board in granting a special permit to a public utility was affirmed, or the denial thereof was reversed by the courts, upon a showing that the services of the public utility were necessary for, and were being used by the community whose zoning board of appeals ruled upon the application for the special permit requested. In the Michaelis case (supra) a booster pumping station was involved; in the Horn case, an electric distribution *803 substation; in the Village of BriarcUff Manor case, a high tension overhead transmission line. The court held in the Village of Old BrooJcville case that gas storage facilities cannot be absolutely prohibited within a municipality whose citizens used the gas. In the Nolan case, the court held a community’s citizenry cannot be deprived of an adequate water supply because the zoning ordinance made no provision for a district in which to locate a water tower.
It should be noted that in all of the afore-mentioned cases, the public utility at the time of the application was serving an essential need of the community for gas, electric power or water, and the utility project or improvement permitted was necessary for the continuation of one of these vital and necessary services.
Such is not the fact in the case at bar. Here, the service which Video seeks to supply is primarily a service which allegedly will benefit (and only indirectly) the residents of New England. The benefits, if any, to the people in Lewisboro will be of minor significance. This is made clear by petitioners’ own application to the Zoning Board of Appeals. Under the heading “ COMMENTS ON PUBLIC INTEREST, CONVENIENCE AND NECESSITY ”, subheading “ introduction ” forming part of the aforesaid application, Video stated as follows: The microwave system proposed by the applicant has been designed especially to meet the commercial and public television communication needs of New. England.”
Under the subheading “ public service characteristics” Video stated: “ New England has long been an important area for manufacturing, commerce, banking, higher education and scientific and medical research. Its population is approximately 12,000,000 which is about 6% of the national total. It has 3% of the nation’s commercial television stations (26) (plus two satellite stations) and 10% of the educational stations (18). Over 80% of its population, (10,000,000) is concentrated in the three-state southern tier bordering New York State, which is served by seventeen commercial television stations and five educational television stations.”
Under the subheading “ public service survey ” it was stated: “ There is a well defined need to provide more flexibility and improve quality of television communications in New England.”
Under the subheading “ existing facilities ” it was stated: “ Television transmission service into New England is currently provided by the Bell Telephone System. Best available information indicates that six two-way microwave channels *804 form the backbone system. The proposed system is designed and routed to best meet the regional television needs. Frequency congestion limits expansion of existing routes which can use existing common facilities, but a new route for television can avoid frequency interference problems and free existing circuits now dedicated to television for new applications. ’ ’
Under the subheading ££ satellite communications” it was stated: ‘£ As discussed in previous sections, the needs for television transmission in New England are local, regional, and national.” and
“ The New England study also showed that it is important to provide low cost circuits from Boston to Springfield, Hartford, New York, New Bedford, etc., and vice versa, as well as to provide low cost local television service by microwave.”
A careful reading of ‘ ‘ Application To The federal communications commission, Washington, D. C. 20554, For Video Common Carrier Microwave Station Construction Permit Under Part 21 Of the Commission’s Buies, Zion Hill Station Woburn, Massachusetts ”, submitted by Video in connection with this application, fortifies the statement of purpose taken from Video’s ££ COMMENTS ON PUBLIC INTEREST, CONVENIENCE AND necessity ’ ’ aforesaid. Moreover, the record reveals that the television networks already have the necessary facilities for transmission by reason of their contracts with the American Telephone and Telegraph Company.
Video claims that its plan will furnish this transmission service cheaper to the networks than is presently done by American Telephone and Telegraph Company. The principal reason for this reduced cost apparently is that American Telephone and Telegraph Company employs more towers but of lower height than Video’s plan proposes. Obviously, the 340-foot tower proposed by Video will have a longer line of sight than the 125-foot tower of American Telephone and Telegraph Company. Moreover, even if Video’s lower cost contention be true, there is no proof, nor is it claimed, that there will be any saving to the television audience or the public generally, who at present pay nothing for their television programs which are financed through the advertising of businesses financially big enough to pay for this expensive advertising medium. NBC, CBS, ABC and others may save some money but this is no saving to the average television watcher anywhere, as might be the case if certain improvements in the distribution of electrical power reduced the cost of the electric utilities which, hopefully, might pass some of the savings to the users of electricity.
*805 The court has carefully examined the entire record before the Lewisboro Zoning Board of Appeals, including all exhibits submitted. The court holds that all findings of fact made by the Zoning Board are supported by the record, as are all of its conclusions with the possible exception of the conclusion that Video is not a public utility. Even if it should be held that Video is a public utility, it was not established in the record before the Zoning Board that the special permit sought by Video was necessary for the public health, safety or welfare.
On the other hand, there is no question that a 340-foot orange and white tower with three or four supporting cables with flashing or revolving lights would be detrimental to the character of the area in a high-class, residential district in a quiet, rural town such as Lewisboro, and would interfere with the quiet enjoyment of their homes by the residents thereof and would seriously reduce the property value of said homes. One thinks of flashing lights at Times Square, not in Lewisboro or similar communities.
The testimony of affected property owners and the admissions of Mr. Carson, representative of Video, established the adverse effect of petitioners’ proposal if, indeed, the 340-foot tower does not per se prove the prospective damage to the neighborhood.
For example, at page 8 of the minutes:
“ Arthur Voute: Considering the close proximity to the school, if one of the children did get over the fence, what would be the danger?
Mr. Carson: Electrically, nothing. They could attempt to climb the tower.”
At page 9:
“Mr. Rowedder: Will there be fashing lights?
Mr. Carson: Rather than flashing they are in a cycle. There are lights at one-third and two-thirds and they are fixed.”
At page 11:
“Paul Zill: I live about 600 feet South of the proposed structure. As a pilot I know you see these from 20 miles at night. A lot of other places in the area will see it. If we set a precedent in allowing this area to go commercial I have been told by one of the owners of the Vista View Farms that they will also make an application to go commercial.”
At page 16:
“Mr. Rowedder: Do you feel if there are homes in the vicinity a location which is less densely populated would be more appropriate?
Mr. Carson: With regard to the concern for the general locale.
Mr. Rowedder: You do feel there is an element of danger?
Mr. Carson: I am talking about my concern and applying for something and taking into account the general locale.
Mr. Raynor: What effect would it have on the value of real estate in the area?
Mr. Carson: The initial impact is a negative one.”
*806 At pages 17 and 18:
“ Jay Kornfeld: It would be a detriment to my house to see a blinking light.
Hr. Dick Mead: I am opposed to it on the basis of commercializing 123. I think just adding this here is making it worse further down the line.
Mr. Rowedder: You oppose to it on the commercial basis.
M. Primanle: I think the Master Plan pointed it out.
Mrs. Hunger: Naturally none of us would like to have the tower, but if you begin taking snatches of residential areas — we spent so much time on the Master Plan I would strongly advise the Board to consider the importance of preserving the area. I am opposing the tower because it is detrimental to the area.” At page 21:
“ Mr. Carson: I think the trends that run through the letters and comments from the audience are all similar to other hearings. Possibly this is a commercial venture. The Town plan was planning for this kind of thing. On property value, if people don’t like it then I guess it will affect property value.”
The court finds further that it would have been a useless gesture for the board to try to prescribe any conditions to the granting of the special permit requested, because no conditions could ameliorate the harmful effects to this residential community of a 340-foot tower with three revolving lights and three or four supporting cables or wires.
In conclusion, the court finds it hard to accept petitioners’ contention that one two-acre plot of land in an R-2 high-class residential district in the Town of Lewisboro is the only feasible spot in an area of 125 square miles in which Video could erect a 340-foot tower allegedly necessary for its purpose. It is hard to accept even that the tower had to be located in the Town of Lewisboro. In fact, Video conceded there was at least one other feasible location. Mr. Carson said the owner of this location would not lease it — he did not say the owner would not sell it. In any event, to grant petitioners the relief which they seek would be to destroy every vestige of home rule given to a township. In this case, it would destroy the careful planning prescribed for the Town of Lewisboro under its master plan.
It is unnecessary to consider the board’s decision in denying the variances requested by the petitioners inasmuch as those questions are not pertinent since the court has upheld the determination of the board in denying a special permit for the 340-foot tower.
Petitioners’ application for an order annulling and setting aside the determination of the Zoning Board of Appeals of the Town of Lewisboro which had denied petitioners’ application for a zoning variance and a special permit to permit the construction, maintenance and operation of a building and tower as described in the petition is in all respects denied.