opinion of the court
Vincent Gurahian, J.
The Zoning Board of Appeals of the Town of Cortlandt has granted a commercial radio station a public utility special use permit to erect transmitting towers in an area zoned for residential use. Petitioner, an owner of neighboring property, brings this CPLR article 78 proceeding for judgment annulling the determination of the respondent zoning board.
Respondent Highland Broadcasting Corporation (Highland), is the licensee of a commercial radio broadcasting station using a designated AM frequency during daylight hours by authorization of the Federal Communications Commission. Highland’s radio station WLNA currently operates a transmitting tower which is located near Highland’s corporate offices in the Town of Cortlandt.
On January 9, 1980, Highland made an application to the Cortlandt Zoning Board of Appeals for a special use permit allowing the construction of five radio broadcasting towers, ranging in height from 158 to 219 feet, on 19 acres *535 of wetlands located in an area zoned residential. Highland had purchased the property a couple of years before. The five towers would replace the existing transmitting facility and will allow Highland to expand its operation by increasing the hours of broadcasting on WLNA from daylight hours to all hours of the day.
The site of the proposed new towers is low-lying and flat. There is an unobstructed view of the site from petitioner’s residence.
A series of public hearings were held at which Highland presented evidence in support of its application including documents and expert witnesses. No substantial evidence was presented in opposition to the application.
The zoning board at first refused to grant the application; however, upon the board’s reconsideration, the special permit was granted unanimously.
The application was made pursuant to section 88-7 of the Cortlandt Zoning Ordinance in conjunction with section 88-38. Section 88-7 allows for special use permits for, inter alia, “public utility uses”. Section 88-38 sets forth standards which must be met in the granting of any special permit pursuant to section 88-7.
The zoning board of appeals decided that WLNA is a public utility. In its findings the board noted the testimony of numerous individuals and associations from Cortlandt to the effect that WLNA is performing a commendable public service which would be of even greater benefit to the community if they were allowed to go to 24-hour broadcasting. Also given weight was the fact that Highland is subject to public regulation by the Federal Communications Commission and that its broadcast license states “it shall render such broadcasting service as will serve public interest, convenience and necessity”.
The board thereafter found that the “additional requirements” for special permits specified by section 88-38 had been met;
The petitioner alleges three bases for relief: first, the determination by the zoning board was illegal and an abuse of discretion, because Highland Broadcasting Corporation is not eligible to obtain a special use permit in these *536 circumstances since it is not a “public utility”; second, the determination granting the application by Highland Broadcasting Corporation for a rehearing was not supported by substantial evidence in the record; and third, the determination by the zoning board granting the application of Highland Broadcasting Corporation for a special use permit was not supported by substantial evidence in the record.
The threshold question presented is whether the board’s finding that the applicant herein is a “public utility” was valid both as a matter of law and of fact.
A common parlance definition of “public utility” may be gleaned from standard sources to mean a private business, often a monopoly, which provides services so essential to the public interest as to enjoy certain privileges such as eminent domain and be subject to such governmental regulation as fixing of rates, and standard of service (see Webster’s Third New International Dictionary; Black’s Law Dictionary; 1 Anderson, New York Zoning Law and Practice [2d ed], §9.19).
It may also be said that public control is usually exercised on a local level and in this State those businesses ordinarily accepted as “public utilities” are within the purview of the Public Service Commission (Public Service Law, § 2, subd 23).
The elements of monopoly, rate fixing, local control and indiscriminate public service are threaded throughout the several definitions of public utility. While perhaps no one of these would be absolutely necessary to considering a given entity as a public utility, the common aspect which appears determinative is the nature of the services provided. Indeed, it is because of this significant feature of vital services that certain businesses are often accorded monopoly status and subject to penetrative regulations.
There is next presented the more specific subject of the meaning of public utility within the framework of zoning law.
Local ordinances similar to the one at bar are commonplace. Public utilities enjoy a favored position in relation to zoning regulations and public utility structures serving *537 the entire community have historically been recognized as reasonable and proper uses in all types of use districts (Staminski v Romeo, 62 Misc 2d 1051).
The ordinance in question here contains no qualification of the term “public utility” and a definition thereof is given to broad interpretation by the respondent zoning board. Notwithstanding, that board’s determination should be limited to the parameters dictated by the rationale behind the special position accorded public utilities historically and in zoning matters specifically; that is, because they are essential to public health, safety and welfare (see Video Microwave v Zoning Bd. of Appeals of Town of Lewisboro, 77 Misc 2d 798).
The focus of the zoning board’s inquiry in such matters should be the nature of the service coupled with the necessity for use of the site in question in providing said services to the community. The board must make a reasonable determination based upon substantial evidence that an. applicant for a special permit is engaged in regularly supplying the public with some commodity or service which is of public consequence or need such as electricity, gas, water, transportation or telephone services. (Staminski v Romeo, supra.)
There remains the narrow issue whether the respondent zoning board has made a legal and reasonable determination that an FCC licensed radio broadcasting station is a “public utility” within the meaning of the zoning ordinance.
It appears that the applicant herein is not a monopoly and, albeit subject to regulation by the Federal Communications Commission, the basis and nature of such regulation does not parallel that of businesses ordinarily accepted as public utilities.
Generally stated, the purpose of FCC regulation of radio stations is to prevent chaos in communications. The scope of such regulation includes such powers as classification of stations, prescription of the general nature of services in each class, assignment of frequency bands, power, time of operation and location. It does not include such basic powers as the fixing of rates. It is also noted that radio *538 stations are not subject to the control of the New York State Public Service Commission.
There may nevertheless be circumstances in which a radio station would be fairly and properly treated as a public utility under zoning ordinances. One example might be where it is the only facility providing such services in a remote or isolated area. However, the essential nature of services underlying the rationale by which “public utilities” are almost invariably true monopolies subject to rate and other regulation has yet to be attributed to standard broadcasting facilities.
In the case of Pulitzer Pub. Co. v Federal Communications Comm. (94 F2d 249, 251), the Circuit Court of Appeals for the District of Columbia, in reviewing an FCC grant of an application for a construction permit by a radio station, stated: “But we have never said that a radio broadcasting station is a public utility in the sense in which a railroad is a public utility. Generally speaking, that term comprehends any facility employed in rendering quasipublic service such as waterworks, gas works, railroads, telephones, telegraphs, etc. The use and enjoyment of such facilities the public has the legal right to demand; but its right to the use and enjoyment of the facilities of a privately owned radio station is of a much more limited character *** the [regulatory] power of Congress [over radio stations] has not yet been extended to the point of fixing and regulating the rates to be charged by the licensee or the establishment of rules requiring it to serve alike the entire public in the use of its facilities. Nor has Congress assumed the right to limit the profits on the basis of its investment or otherwise. The licensee of a radio station chooses its own advertisers and its own program, and generally speaking the only requirement for the renewal of its license is that it has not failed to function and will not fail to function in the public interest.” (See, also, Sanders Bros. Radio Sta. v Federal Communications Comm., 106 F2d 321.)
Respondents herein place considerable reliance on the decisions in Staminski v Romeo (62 Misc 2d 1051, supra) and State ex rel. Pruzan v Redman (60 Wn 2d 521). Each *539 case involved the granting of a special permit under zoning ordinances similar to the one at bar.
The Staminski case held a master antenna for a cable TV company to be a public utility structure. The court found no restricting language on the term “public utility” as used in the zoning ordinance and found such term broad enough to give the zoning board jurisdiction to issue a use permit. It is noted that said case may be distinguished from the one at bar in that the cable TV company was subject to the control of the New York State Public Service Commission.
In the Redman matter, an appellate court held a radio broadcasting system to be a “public utility”.
Contrary opinions are to be found in the WANV, Inc. v Houff (219 Va 57) and Commonwealth, Public Utility Comm. v WVCH Communications (23 Pa Commw 292).
In the former case the Supreme Court of Virginia held that the term “utilities” as employed in a local zoning ordinance includes those utilities that provide services which are necessary and essential to any residential area and that a radio tower is not contemplated within the meaning of that term. In the later case the Commonwealth of Pennsylvania held that the mere facts that a radio station serves a public interest and is regulated to some extent by the FCC do not make it a “public utility corporation”.
With respect to the holding in State ex rel. Pruzan v Redman (60 Wn 2d 521, 534, supra), it is noted that there was a dissenting opinion which stated: “Other factors tend to confirm my belief that the radio transmitter facility involved herein is not a public utility within the meaning of the zoning ordinance. The station does not necessarily have to be located within an area zoned for single-family dwellings in order to serve that community. In that respect, it is unlike an electric power substation, a branch telephone exchange, or a sewage treatment plant. Furthermore, the purpose in establishing this radio station is only partly to serve the local community *** The primary motivation is commercial. Again, this is unlike the public utilities which are necessarily located in a single-family district for the purpose of serving that particular area.”
*540 On the question of what is a public utility in the contemplation of zoning ordinances and whether standard broadcasting facilities ordinarily fall within, this court is compelled to agree with the holdings in Pennsylvania and Virginia, as well as the dissenting opinion in Washington.
This court finds that there is nothing in this record by which the respondent zoning board of appeals might reasonably have found that the necessary criteria is met by the applicant. It has not been established by substantial evidence that the applicant is a public utility as a matter of fact.
Upon the entire record presented the court further finds that the applicant is not a public utility as a matter of law.
The applicant herein should be in the same position as any other business which is required to seek a commercial variance rather than a special permit as a public utility.
The petition is granted.