*303 OPINION OF THE COURT
Donald N. Silverman, J.
This proceeding is brought pursuant to CPLR article 78. Petitioner, Cellular Telephone Company (hereinafter Metro One), seeks a review of the April 10, 1991 resolution issued by the respondent Zoning Board of Appeals of the Village of Dobbs Ferry (hereinafter ZBA). This resolution affirmed the Building Inspector’s denial for a permit to construct a cell site[1] as a nonconforming use, and further denied Metro One’s application for a use variance for the site. Metro One alleges that the ZBA’s determination is arbitrary, capricious, and contrary to the facts and the law. On these grounds, Metro One requests the court to direct the ZBA to approve its application for a use variance. In light of the allegations and requested relief this special proceeding is in the nature of mandamus to review. This appears to be a matter of first impression to the extent it applies a public utility standard to an issue of siting an unpermitted use.
The court has received the following papers for consideration: petition with exhibits, supporting affidavits, and supporting memorandum of law; verified answer, supporting affidavit in opposition, supporting memorandum of law in opposition, and certified return; amicus curiae memorandum of law in support of petition; various letters in response to above and each other dated October 8, 9, 11 and 12, 1991; and the Zoning Code of the Village of Dobbs Ferry as amended in 1989.
Metro One made application to the ZBA for a use variance on October 18, 1990 in order to construct a cell site on a parcel of property owned by the Children’s Village.[2] The parcel subject to the lease agreement is approximately 800 square feet of land located within Children’s Village. A 70-foot water tower is located on this parcel. The tower is also subject to the lease agreement for the purpose of locating antennas. This is the only structure currently on the leased parcel. *304 Construction of the proposed cell site would include the attachment of nine antennas to the existing water tower. These antennas would not exceed the tower’s height or alter the skyline. A 14 by 28 foot modular building to house equipment, an access road, and fencing would also be included.
Under the local zoning code this is neither an as of right use within an educational zone, nor a use allowed by special permit. As a consequence, the Building Inspector denied Metro One’s application for a building permit. Petitioner then sought relief from the ZBA by application for a use variance. A series of public hearings regarding Metro One’s application commenced on November 14, 1990 and was continued on January 9, 1991 and February 13, 1991. During these hearings, Metro One presented expert testimony regarding the visual impact, noise levels, and health risks of the proposed site, and answered questions from the ZBA and local residents.[3] At the ZBA’s request, Metro One submitted the full lease agreement between it and the Children’s Village. Also at the ZBA’s request, Metro One supplied current safety standards regarding radio transmissions, such as those used by cellular telephone communications, from the American National Standards Institute; the Environmental Protection Agency; and the Occupational Safety and Health Act (29 USC § 651 et seq.).[4] Metro One also complied with the ZBA’s request for documentation of alternative sites.
The hearings were closed on February 13, and a vote was taken. This vote and a subsequent one on March 13 was insufficient to resolve the matter. On April 10, 1991, a third vote was taken denying Metro One’s application. On June 10, 1991, the ZBA filed, with the Village Clerk, "Findings of Fact” including a list of documents considered in its determination, and a "Conclusion” regarding its denial of Metro One’s application.
In its conclusions respondents made nine enumerated holdings:
1. The owner and occupant of the property, Children’s Village, is fully capable of utilizing the subject lands — as it *305 has over a period of many years — without coming into conflict with the restrictions of the Dobbs Ferry zoning ordinance.
2. Applicant has failed to adduce sufficient and adequate evidence and proof to the satisfaction of the Board that either significant economic and financial hardship and/or injury or practical difficulties exist.
3. Applicant has failed to adduce sufficient and adequate evidence and proof demonstrating unnecessary hardship.
4. Applicant has failed to adduce sufficient and adequate evidence and proof that there exists a public necessity for its service, or what the needs of the broader public are relating to such service, or that it is a public utility relating to the zoning ordinance.
5. Applicant failed to adduce sufficient and adequate evidence and proof demonstrating the absence of possible future hazard to the health and welfare of the community.
6. Applicant failed to adduce sufficient and adequate evidence to establish lack of alternate sites which would accommodate applicant’s needs for its business.
7. The proposed use impermissibly would convert educational zoned tax-exempt property to commercial use.
8. The proposed use, impermissibly, would alter the community’s long existing fundamental land use plan.
9. The evidence and law as submitted to the Board do not warrant the granting of the application.
There are two issues critical to this proceeding. The first is whether respondent erred in applying the traditional use variance test enunciated in Matter of Otto v Steinhilber (282 NY 71, 76 [1939]). The second is whether the denial has a rational basis in any of the remaining conclusions.
Both the findings and the conclusions, as well as the record, reflect respondents’ heavy reliance on the classic use variance analysis set out in Matter of Otto (supra). However, petitioner, in its application, presented itself as a public utility. A public utility is accorded a somewhat different standard of review than the one employed in Otto (see, 1 Anderson, New York Zoning Law and Practice § 11.24, at 564-565 [3d ed 1984]). The difference is set out in Matter of Consolidated Edison Co. v Hoffman (43 NY2d 598 [1978]). "Instead, the utility must show that modification is a public necessity in that it is required to render safe and adequate service, and that there are compelling reasons, economic or otherwise, which make it more *306 feasible to modify the plant than to use alternative sources of power such as may be provided by other facilities. However, where the intrusion or burden on the community is minimal, the showing required by the utility should be correspondingly reduced”. (Matter of Consolidated Edison Co. v Hoffman, supra, at 611; see also, Matter of Zagoreos v Conklin, 109 AD2d 281, 288-290 [2d Dept 1985].)
Courts have already sought to determine public utility status in the context of zoning law: "A common parlance definition of 'public utility’ may be gleaned from standard sources to mean a private business, often a monopoly, which provides services so essential to the public interest as to enjoy certain privileges such as eminent domain * * * of service.” (Matter of Mammina v Zoning Bd. of Appeals, 110 Misc 2d 534, 536 [Sup Ct, Westchester County 1981].) It is undisputed that Metro One is a telephone corporation pursuant to Transportation Corporations Law § 25. Further, Metro One provides cellular telephone service in New York under a franchise pursuant to Public Service Law §99 and by certificate of public convenience and necessity issued by the Public Service Commission on May 18, 1985. All telephone corporations are mandated by Public Service Law §91 (1) to furnish "instrumentalities and facilities” that are "adequate and in all respects just and reasonable.” The ZBA, however, insists that Metro One is not a public utility within the contemplation of Hoffman (supra) because it does not operate as a monopoly like Con Edison.
As noted in Mammina (supra, at 536), "elements of monopoly, rate fixing, local control and indiscriminate public service are threaded throughout the several definitions of public utility.” Monopoly status, alone, is not a dispositive criteria. Moreover, a radio-telephone company has been held to be a public utility pursuant to Public Service Law § 2 (17) (see, Matter of Capital Tel. Co. v Kahn, 81 Misc 2d 444, affd 52 AD2d 650, lv denied 39 NY2d 710 [1976]; Matter of Radio Common Carriers v New York State Pub. Serv. Commn., 79 Misc 2d 600, affd 48 AD2d 756, lv denied 37 NY2d 709 [1975]; see also, Matter of Payne v Taylor, 178 AD2d 979 [4th Dept] [regarding a 400-foot antenna tower to supply cellular telephone service, "The respondent partnership is a 'public utility’ as defined by relevant statute (see, Public Service Law § 2 [17], [18], [23]; Tax Law § 186-a [2] [a] [i]; Town Law § 118) and provides a useful public service.”]; cf., Video Microwave v Zoning Bd. of Appeals, 77 Misc 2d 798, 800, 801, 805 [Sup Ct, *307 Westchester County 1974]). This court finds that, as a matter of law, Metro One is a public utility and that respondent’s findings and conclusions to the contrary are incorrect.
In contrast to respondent’s position that petitioner is not a public utility its determination also includes findings and conclusions holding that public utility standards have not been met, see conclusions four, five and six (supra). Where an administrative decision is premised on various findings, several of which are clearly flawed, can the remaining findings serve as a sufficient rational basis for the decision? Or, as one court has phrased it, the issue is “whether the conclusion arrived at by that body has any reasonable basis in fact, based upon the record before it.” (Matter of Mandell v Purcell, 54 AD2d 935 [2d Dept 1976]; see also, Matter of Pell v Board of Educ., 34 NY2d 222, 231 [1974].)
The conclusions in question are not distinguished from the rest, nor are they offered as alternatives. For that matter, it is difficult to ascertain the basis for these conclusions. They presuppose the applicant to be a public utility subject to the Consolidated Edison standard. This is at odds with the analysis respondent relied on in reaching the other conclusions. Yet, there is no effort to treat these as distinct grounds. This court finds that the entire determination is essentially a whole piece and, as such, is flawed in its entirety by application of the incorrect legal standard. The heavy reliance on that standard permeates the decision and robs it of the requisite rational basis.
Further, the conclusions numbered four, five and six do not comport with the standard in Consolidated Edison (supra). Respondent points to no countervailing proofs in the record to directly challenge or overcome petitioner’s evidence on safety, adequacy and location of service. Respondent did receive and incorporate numerous articles on electro magnetic radiation submitted by individuals. However, none of these are claimed to specifically contradict the evidence presented by petitioner. Neither did respondent directly challenge petitioner’s testimony on the suitability of the cell site. It is not sufficient to make findings and conclusions without a basis in the record (see, People ex rel. Fordham Manor Refm. Church v Walsh, 244 NY 280, 290 [1927]). Finally, the determination makes no reference to the degree of intrusion. Consolidated Edison involved construction of a natural draft wet cooling tower for a nuclear generating plant. It is apparent that the instant cell site is considerably smaller. Certainly the respondent should *308 have considered the relative magnitude of the proposed project. The fact that this was not addressed serves to illustrate the reliance placed on traditional use variance analysis.
This court considers the remaining conclusions and finds as follows:
The first conclusion is that Children’s Village as the owner of the property was capable of utilizing the land pursuant to existing requirements. This truism misses the point. Petitioner as lessee of the parcel is entitled to apply for the variance (see, Village Law § 7-712 [2] ["Such appeal may be taken by any person aggrieved”]; see also, Matter of Emmi v Zoning Bd. of Appeals, 63 NY2d 853, 855 [1984]; see too, Village Code of Dobbs Ferry, Zoning and Land Use § 300-95 ["any person aggrieved”]).
The seventh and eighth conclusions hold that granting the variance would work a rezoning from educational to commercial use and would impermissibly alter the community’s land use plan. Depending on the scope and magnitude of a variance, such a change may be subject to challenge as a rezoning (see, Van Deusen v Jackson, 35 AD2d 58, 60 [2d Dept 1970]). However, there is nothing particularly remarkable about this since the power to grant variances is expressly provided in Village Law § 7-712 (2) (c). "Indeed, consideration of the needs of a broader public are reasonably within the contemplation of the enabling legislation, which authorizes a zoning board to grant a variance 'so that the spirit of the local law or ordinance shall be observed, public safety and welfare secured and substantial justice done’ (Village Law, § 7-712, subd 2, par [c]).” (Matter of Consolidated Edison Co. v Hoffman, supra, at 608; see too, Matter of Village Bd. v Jarrold, 53 NY2d 254, 257 [1981].)
Consolidated Edison (supra) did not address the siting of a utility. However, it did make reference to case law involving questions of siting (supra, at 610, 611; see, Matter of Long Is. Light. Co. v Griffin, 272 App Div 551, 554 [2d Dept 1947]; Matter of Niagara Power Corp. v City of Fulton, 8 AD2d 523, 528, 529 [4th Dept 1959]). These indicate that, "consideration must be given to the availability of other sites and to the degree of detriment to the neighborhood which might be caused by the various sites as weighed against their comparative advantages” (Matter of Niagara Power Corp. v City of Fulton, supra, at 528; see too, Matter of Zagoreos v Conklin, 109 AD2d, supra, at 289 ["a balance must be maintained *309 between those interests of the locality which can be expressed by zoning ordinances and the needs of the community which must be served by the utility.”]). Not only is it within the power of respondent to grant a variance, but, the fact that the applicant is a utility calls for a balancing of interests. Conclusions seven and eight contain no hint of such a balancing approach.
The ninth conclusion states the evidence and law as submitted do not warrant the granting of the application. By itself this sort of generalized and conclusory statement is of little value. Here it serves as a kind of final catch-all provision which essentially recapitulates the foregoing conclusions.
In sum, the decision is found to be significantly flawed in its analysis and conclusions to the point of irrationality (see, Matter of Pell v Board of Educ., 34 NY2d 222, supra). It is, therefore, the finding, decision and judgment of this court that respondent’s determination is arbitrary and capricious and is annulled and vacated. Respondent is directed to issue the variance applied for within 30 days of filing and entering of this judgment.

. A cell site is a relay station consisting of antennas and computer equipment which facilitate the transmission of cellular telephone communications.

. Children’s Village is a not-for-profit corporation authorized by the New York State Department of Social Services. The Children’s Village corporation operates a campus style residential treatment center for abused, neglected and abandoned children on a 209-acre property known as the Children’s Village located in Dobbs Ferry, New York. Children’s Village joins this action with the court’s consent as amicus curiae in support of Metro One’s petition.

. These issues were raised in response to local concerns and not due to environmental impact regulations.

. In support of its claim that no health hazards exist, Metro One also submitted the Massachusetts and New Jersey standards for the transmissions used by cellular telephone communications. New York State has not set standards.