NORTH SANITARY LANDFILL, INC., APPELLEE, *v.* BOARD OF
COUNTY COMMISSIONERS, APPELLANT█

(No. 5296—Decided November 18, 1976.)

*Messrs. Smith & Schnacke* and *Mr. Michael R. Merz,*
for appellee.

*Ms. Lillian M. Kern,* for appellant.

McBRIDE, J. This case originated in the Court of Common Pleas as a R. C. Chapter 2506 appeal from a decision of the Board of County Commissioners of Montgomery County that rejected the plans and specifications of North Sanitary Landfill, Inc., for refuse disposal operations on state Route 49 near state Route 40. The trial court reversed and vacated that decision and entered a final judgment in favor of the North Sanitary Landfill, Inc. It is from

this reversal and final judgment that the commissioners have perfected their appeal to this court.

We eliminate from this appeal such issues as whether the decision of the commissioners was a legislative or quasi-legislative act, and possibly not appealable, as well as the nature of the act of the commissioners in the operation under the statutes of what is a public utility, a governmental function within its delegated power to organize and conduct a refuse disposal district in the county. These questions were not argued or presented.

The first and most significant assignment of error is that the trial court erred in finding that a board of county commissioners is not empowered by R. C. Chapter 343 to approve or disapprove a private sanitary landfill site within the territory of a refuse district.

Buried in the lengthy provisions of R. C. 343.01(A) appears the language:

*No garbage and refuse disposal system plant or facilities shall be constructed in any county outside municipal corporation by any person, firm, or corporation until the plans and specifications for such plant or facilities have been approved by the board.*[2] (Emphasis added.)

This is followed by a provision for public supervision of such construction.

The trial court construed this condition as requiring the approval of the board "*only* where such refuse disposal systems are constructed within a garbage and refuse disposal district, established pursuant to Revised Code 343.01 *et seq. and* to be utilized in connection with refuse disposal systems installed pursuant thereto."

We do not agree with the limitations impressed by the court on the express authority granted by the legislature in the above quoted language of the statute. In the first place, the words used are clear and unqualified. No refuse system may be constructed by any one without the approval of the board that operates a public disposal district. In the second place, this provision requiring others

---

[2]The language of this provision was changed, after this cause was tried, to include refuse recycling and resource recovery facilities.

to obtain approval has no application to facilities owned, operated or used by the board. The language of the statute cannot be so construed and limited as to mean that the board must secure its own approval of its own acts and not apply to other persons, firms or corporations. Last, and more significantly, the series of sections must be construed together to achieve the legislative purpose.

R. C. 343.01 through 343.08 establish a governmental agency known as a garbage and refuse disposal district, much the same as existing conservancy districts, for the purpose of meeting an urgent public necessity. The flood of garbage and refuse may well be compared to the disaster of the 1913 flood. To accomplish this purpose, the legislature provided for the creation of the district, the issuance of public bonds and the method for repayment by all to whom the service is available. Boards of county commissioners are authorized to fix rates to be paid by everyone who owns premises where the collection or disposal of garbage and refuse is available. In effect, the legislature established a public utility to be operated by the county commissioners. To insure its successful operation, the repayment of its loans and fair and reasonable rates, the legislature required that no other such facility be constructed without the approval of the board operating the public refuse district.

The importance of the latter factor appears in the minutes of the board when it rejected the request for the approval of the private, independent operation. It was pointed out that approval would create competition for the existing public incinerators and may even defeat or destroy the existing public refuse system as well as a recycling system that may be adopted.

Viewed in the context of the general legislative purpose expressed in the statutes, the language quoted earlier from R. C. 343.01 consistently grants authority to the commissioners to operate a public refuse district and the power to approve or disapprove the construction of other similar facilities by any other person, firm or corporation. The language quoted fits into the package of related sections that create an exclusive public district authority for

the territory that may or may not use private facilities at its discretion. The decision as to the approval of construction by others rests exclusively in the commissioners.

The first assignment of error is sustained.

The second and third assignments of error are related and will be discussed together. The second claim of error of law lies in the ruling that R. C. Chapters 3734 and 3745 *preempted* the regulation of sanitary landfills and removed the power of the commissioners in the operation of a refuse district to approve or disapprove plans for a private sanitary landfill. The third assignment of error asserts that error was committed in the finding that even if the commissioners had such power, it was lost because the environmental protection agency acted first in granting its approval.

R. C. Chapter 3734 provides for the supervision and inspection of the operation of solid waste disposal sites to prevent a nuisance and requires that a license be issued from the board of health of each district. It gives the Director of Environmental Protection authority to adopt regulations on the subject. It also requires plans for new facilities to be approved by the Director of Environmental Protection and that no denial may be made without a written order and findings to be sent to the applicant. R. C. 3734.05. R. C. 3734.09 includes special consideration where a license is held by a political subdivision. This includes the operation of such facilities by a city, county, township or other political subdivision, such as a county or township district created by either R. C. 343.01 *et seq.* or R. C. 505.27 *et seq.*

R. C. Chapter 3745 creates the Environmental Protection Agency to prevent and control air and water pollution and the disposal and treatment of wastes and refuse.

It is clear that neither the health department nor the Environmental Protection Agency operate any of the subjects that they supervise. They are not public utilities. They do not construct or provide such facilities. Their duties are limited to seeing that others, including local government units, comply with health, pollution and en-

vironmental laws and regulations—that is, the enforcement of laws and regulations.

The relationship between health and environmental agencies and the intent of the General Assembly in that respect is clearly set forth in R. C. 343.01, in the first sentence immediately preceding the quotation set forth earlier in this opinion. After giving the board of county commissioners authority to make and enforce rules and regulations for the construction, maintenance, *protection* and *use* of garbage and refuse collection and disposal facilities, the legislature continues:

*"Such rules and regulations shall not be inconsistent with the rules and regulations of the director of environmental protection."* (Emphasis added.)

Thereafter follows the language quoted earlier prohibiting the construction of similar facilities in a refuse district by anyone else until approved by the board of county commissioners.

In this section, the legislature distinguishes the duties of the respective public agencies. The board of county commissioners may deny the approval of construction of new facilities *within its refuse district*. The health and environmental agencies may refuse a license to any public or private agency, for appropriate health or environmental reasons within its jurisdiction. Aided by this legislative direction to the county board, that it must comply with environmental laws and regulations, the special provision in R. C. 343.01, giving the county board authority over construction within its public refuse district, takes on a more significant meaning, unrelated to health and environmental problems that are delegated to other state agencies, but related to the legislative purpose in granting the county authority to own and operate a public refuse district and to take such action within its district as is necessary to recover for its services and repay its obligations.

We agree with the trial court that the enforcement of health and environmental laws and regulations rests with agencies other than a county refuse district. This arises

by way of legislative delegation and not by preemption. This exercise of enforcement rights by the state through other agencies in no way restricts or conflicts with the right of the county board of a disposal district to deny permission for construction of facilities by private parties within its public district or with the right of such board to adopt rules for the "construction, maintenance, *protection* and *use* of garbage and refuse collection and disposal facilities" within its district.

Preemption arises in laws adopted by different authorities on the same subject. Here, there is a single source of authority, the General Assembly. When different laws are adopted by a common authority, the initial presumption is that each relates to a different matter and that they are not incompatible or inconsistent. If laws enacted by the same authority are inconsistent, the latter prevails by way of implied repeal and not by way of preemption.

However, in the present situation, one set of laws governing enforcement operates uniformly over the state as to all, public and private agencies. The other set of laws incorporates the first, at least as to the enforcement of health regulations, and proceeds to authorize the optional creation of a district for the public *operation* of collection and disposal facilities. The authority and responsibility of the latter is not parallel or similar to that of the health and environmental agencies even though their ultimate general purpose has a similar public objective.

A situation quite similar to the present case arose on the issue of the fluoridation of water. The statute on the use of fluorides in the water supply relates to the enforcement of the health laws in the operation of local water treatment; however, the enforcement of such laws in no way preempted or destroyed the authority of those operating water treatment plants to protect and preserve the use of resources and rights within water districts. In other words, the public agencies involved in this case operate in different areas of public administration. The doctrine of preemption and the rule that the agency acting first has exclusive jurisdiction has no application.

The second and third assignments of error are sustained.

The fourth assignment of error is based upon the finding that the power to refuse permission to construct competing private facilities within the public district under R. C. 343.01 cannot be exercised without giving the applicant notice of a hearing and due process at which the merits or demerits of the proposal will be considered.

Probably the most succinct answer to this is that while the General Assembly gave boards authority to resolve the request it did not provide for a public hearing or due process as it has in so many other instances. As was mentioned at the outset, the question of whether the act of the board was political or legislative in character, rather than a determination of a private right and subject to notice and due process, has not been raised or discussed. The legislature has given a board operating a refuse district the authority to finance, build and operate a collection and refuse disposal facility for the entire county. The legislature did not give such right to any private person, firm or corporation. Instead, it required the approval of the board for the construction of such facility by others within the public district.

References to cases involving the adjudication of private rights do not apply to the instant situation. Here we have the management of the operation of a local public utility, operated by county commissioners, considering a request of a private corporation to construct a competing facility that is desirous of also serving the public within the same district. Obviously, the allowance of such a request and of others of a similar nature could destroy the public utility and result in financial disaster for the public. In the absence of the production of a better reason or some explanation of the legal rights of the applicant that are to be "adjudicated" by the board, we find that there was no error in deciding the application without notice of the public session. The failure to give notice did not deprive the board of its power.

This assignment is sustained.

The fifth assignment of error relates to the finding of the trial court on appeal that the decision of the board is unsupported by a *preponderance* of substantial, reliable and probative evidence. While we need not discuss what the weight of the evidence must be, the finding indicates a consideration of the weight of the evidence, a function reserved for the trier of the facts.

The record contains substantial credible evidence relating to nuisance, health and environmental factors which, while serious, may be more appropriate before another body, consistent with the separate powers delegated to those other than the county board. The question the board had to decide was not whether a license should be issued or the laws enforced, but whether another refuse facility should be constructed and operated by a private corporation within the territory and in competition with this public collection and refuse disposal district. Only the county board had the power under its legislative mandate to grant or deny such permission. In view of the purpose for the enactment of the statutes creating authority for a refuse district and the evidence, however slight, of the effect of authorizing construction, not for the use of the district authority, but in competition with it, we find no abuse of discretion in the denial by the commissioners of permission for the construction of the proposed private refuse disposal facility.

The fifth and final assignment is sustained.

The judgment of the trial court reversing the finding of the board and entering a final judgment on behalf of the appellee is reversed and a final judgment is awarded sustaining the decision of the board in which they denied permission for the construction of the proposed refuse disposal facility.

*Judgment reversed.*

KERNS, P. J., and SHERER, J., concur.