OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

A & B Refuse Disposers, Inc., Appellant, v. Board of Ravenna Township Trustees et al., Appellees.

[Cite as A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees (1992),     Ohio St.3d    .]

Public utilities -- Determination of whether entity is a public utility for the purpose of exemption from local zoning restrictions requires consideration of several factors related to the "public service" and "public concern" characteristics of a public utility.

The determination of whether a particular entity is a public utility for the purpose of exemption from local zoning restrictions requires a consideration of several factors related to the "public service" and "public concern" characteristics of a public utility. While the definition of a "public utility" is a flexible one, the entity must provide evidence that it possesses certain attributes associated with public utilities or its claim to that status must fail.

(No. 91-1099 -- Submitted May 5, 1992 -- Decided August 19, 1992.)

Appeal from the Court of Appeals for Portage County, No. 90-P-2196.

Plaintiff-appellant, A & B Refuse Disposers, Inc., is an Ohio corporation engaged in the business of collecting solid waste from industrial, commercial and residential customers. Appellant has operated a landfill, located in Ravenna Township, Portage County, Ohio, since 1962. In 1988, appellant acquired a sixty-six-acre parcel of land adjacent to the landfill. Pursuant to the Ravenna Township Zoning Code, this property is zoned R-3, residential use only. Appellant intends to construct a truck terminal and offices on the sixty-six acres and plans to remove dirt from that property for use as cover material on the landfill. After discussing its proposed use of the acquired property with township officials, appellant was advised that such proposed use probably would not be approved.

Appellant then filed this declaratory judgment action in the common pleas court, naming the Board of Ravenna Township Trustees and the Ravenna Township Zoning Inspector as defendants, and asked for a determination of whether its

landfill operation was subject to regulation under the Ravenna Township Zoning Code. At trial, the only evidence presented was the testimony of appellant's general manager and secretary-treasurer, Eugene McFarland. McFarland stated that the landfill was "open to all residents of Ravenna Township." He admitted that he was responsible for setting the rates charged to those members of the public who availed themselves of this service and that these rates were not subject to review by the Public Utilities Commission of Ohio.

In its decision, the trial court found that the sole question before it was whether appellant was operating a landfill as a public utility and was, therefore, exempt from township zoning regulation pursuant to R.C. 519.211, effective March 5, 1987 (now R.C. 519.211[A], effective October 15, 1991). In determining that appellant's landfill was not the functional equivalent of a public utility, the trial court held, in part, that appellant neither served those of the public who needed its services without discrimination nor served such a substantial part of the public as to make its rates, charges or methods of operation a matter of public concern. The trial court also noted that the proposed use of the sixty-six acre tract was not necessary to the operation of the landfill. As a result, the court concluded that granting public utility status to the sanitary landfill would not exempt the acquired tract from local zoning restrictions.

Upon appeal, the court of appeals affirmed. The appellate court rejected appellant's argument that its landfill was a "public utility" as defined in Marano v. Gibbs (1989), 45 Ohio St.3d 310, 544 N.E.2d 635.

This cause is now before the court pursuant to the allowance of a motion to certify the record.

Vorys, Sater, Seymour & Pease, Michael G. Long, David W. Hardymon, William C. Heer III and Thomas J. Sicuro, for appellant.

David W. Norris, prosecuting attorney, and Kent M. Graham, for appellees.

Robert D. Horowitz, prosecuting attorney, and David A. Thorley, urging affirmance for amicus curiae, Ohio Prosecuting Attorneys' Association.

Emens, Hurd, Kegler & Ritter and William J. Brown, urging affirmance for amicus curiae, Mid-American Waste Systems, Inc.

Szolosi & Fitch, Michael R. Szolosi and Kimberly A. Rye, urging remand for amicus curiae, National Solid Waste Management Association.

Melvin L. Resnick, J. The precise issue in this case is whether the definition of a "public utility," as expressed in case law, is applicable to appellant's landfill operation for the purpose of exemption from township zoning restrictions.

Former R.C. 519.211 expressly exempts public utilities from township zoning regulation and land use controls. R.C. Chapter 519 does not, however, provide a definition of the term "public utility" for the purpose of determining qualification for the exemption. Nevertheless, the meaning of "public utility," although sometimes elusive, has gradually evolved through case law.

Determination of whether a particular entity is a public utility is a mixed question of law and fact. Marano v. Gibbs, supra, at 311, 544 N.E.2d at 636. The resolution of the question of whether an enterprise is operating as a public utility is decided by an examination of the nature of the business in which it is engaged. Indus. Gas Co. v. Pub. Util. Comm. (1939), 135 Ohio St. 408, 14 O.O. 290, 21 N.E.2d 166, paragraph one of the syllabus. Although case law provides a list of characteristics common to public utilities, it is generally recognized that none of these characteristics is controlling. Montville Bd. of Twp. Trustees v. WDBN, Inc. (1983), 10 Ohio App.3d 284, 10 OBR 400, 461 N.E.2d 1345. That is, each case must be decided on the facts and circumstances peculiar to it. Indus. Gas Co. v. Pub. Util. Comm., supra, at 413, 14 O.O. at 292, 21 N.E.2d at 168.

Nonetheless, public utilities possess certain common attributes or characteristics which courts employ in determining the nature of an entity's operations. The main and frequently most important attribute of a public utility is a devotion of an essential good or service to the general public which has a legal right to demand or receive this good or service. S. Ohio Power Co. v. Pub. Util. Comm. (1924), 110 Ohio St. 246, 252, 143 N.E. 700, 701, quoting Allen v. RR. Comm. of California (1918), 170 Cal. 68, 175 P. 466; Freight, Inc. v. Northfield Ctr. Bd. of Twp. Trustees (1958), 107 Ohio App. 288, 292-293, 8 O.O.2d 212, 215, 158 N.E.2d 537, 540; Motor Cargo, Inc. v. Richfield Bd. of Twp. Trustees (1953), 67 Ohio Law Abs. 315, 318, 52 O.O. 257, 258, 117 N.E.2d 224, 226. See, generally, 2 Anderson, American Law of Zoning (3 Ed. 1986) 568, Section 12.32. The fact that a private business provides a good or service associated with the usual subject matter of a public utility does not give rise to a presumption that it is devoted to public service. S. Ohio Power Co. v. Pub. Util. Comm., supra, paragraph one of the syllabus. Rather, in order to qualify as a public utility, the entity must, in fact, provide its good or service to the public indiscriminately and reasonably. Marano v. Gibbs, supra, at 311, 544 N.E.2d at 636. See, also, S. Power Co. v. Pub. Util. Comm., supra, paragraph two of the syllabus; Freight, Inc. v. Northfield Ctr. Twp. Bd. of Trustees, supra, at 292, 8 O.O.2d at 214, 158 N.E.2d at 540. See, generally, 64 American Jurisprudence 2d (1972) 550, Public Utilities, Section 1. Further, this attribute requires an obligation to provide the good or service which cannot be arbitrarily or unreasonably withdrawn. Freight, Inc. v. Northfield Ctr. Twp. Bd. of Trustees, supra, at 293, 8 O.O.2d at 215, 158 N.E.2d at 540.

The second characteristic of a public utility most often addressed by courts is whether the entity, public or private, conducts its operations in such a manner as to be a matter of public concern. Marano v. Gibbs, supra. Normally, a public utility occupies a monopolistic or ogopolistic position in the marketplace. Greater Fremont, Inc. v. Fremont (N.D. Ohio 1968), 302 F.Supp. 652, 664-665. See, also, Mammina v. Cortlandt Zoning Bd. of Appeals (1981), 110 Misc.2d 534, 536, 442 N.Y.S.2d 689, 691. This position gives rise to a public concern for the indiscriminate treatment of that portion of the public which needs and pays for the vital good or service

offered by the entity.  Factors utilized in determining whether an enterprise conducts itself in such a way as to become a matter of public concern include the good or service provided,1 competition in the local marketplace,2 and regulation by governmental authority.3  Again, however, none of these factors is controlling.  Nevertheless, in a case where the business enterprise serves such a substantial part of the public that its rates, charges and methods of operation become a public concern, it can be characterized as a public utility.  Indus. Gas Co. v. Pub. Util. Comm., supra, at 414, 14 O.O. at 292, 21 N.E.2d at 168.

In this court's most recent pronouncement dealing with the definition of "public utility," we summarized the foregoing controlling precedent by stating:

"* * * [A]n entity may be characterized as a public utility if the nature of its operation is a matter of public concern, and membership is indiscriminately and reasonably made available to the general public."  Marano v. Gibbs, supra, at 311, 544 N.E.2d at 637.

Again, this is a distillation of prior case law.  It is obvious from a review of that case law that the determination of public utility status requires a flexible rule, a rule which often intertwines the factors considered in relation to the concepts of "public service" and "public concern."  Our holding in Marano v. Gibbs does not dispense with the factors which must be considered by a court in making its determination of whether, on the particular facts and circumstances of the case before it, a specific business qualifies as a public utility. For this reason, we reject appellant's assertion that Marano v. Gibbs, supra, stands for the proposition that any business which simply claims that its services are "open to the public" can be categorized as a public utility.  This view is an unduly expansive construction of our holding in that such a definition encompasses traditional private business enterprises which are, in various degrees, regulated by diverse public authorities, e.g., dry cleaners, restaurants, and grocery stores.  They are not and should not be deemed public utilities.  We hold, therefore, that the determination of whether a particular entity is a public utility for the purpose of exemption from local zoning restrictions requires a consideration of several factors related to the "public service" and "public concern" characteristics of a public utility.  It follows that a business claiming public utility status bears the burden of offering sufficient evidence on these factors to the trial court so that the court can comprehensively determine the merits of that claim.  Absent sufficient facts as to pertinent attributes, that claim must fail.

Appellant also proposes that state regulation of a waste disposal facility pursuant to R.C. Chapter 3734 qualifies a sanitary landfill as a matter of public concern for the purpose of exemption from the imposition of local zoning laws.

The General Assembly enacted R.C. Chapter 3734 because of a public concern with adverse environmental effects related to the collection and disposal of solid waste.  The rules and regulations promulgated and administered by the Ohio Environmental Protection Agency arise from this public concern and are imposed for the protection of the environment and for

human health and safety.  Families Against Reily/Morgan Sites v. Butler Cty. Bd. of Zoning Appeals (1989), 56 Ohio App.3d 90, 96, 564 N.E.2d 1113, 1120; Hulligan v. Columbia Twp. Bd. of Zoning Appeals (1978), 59 Ohio App.2d 105, 108, 13 O.O.3d 162, 163, 392 N.E.2d 1272, 1274; N. Sanitary Landfill, Inc. v. Bd. of Cty. Commrs. (1976), 52 Ohio App.2d 167, 170-171, 6 O.O.3d 162, 164, 369 N.E.2d 17, 20.  On the other hand, and as stated previously, the public concern as it relates to a public utility arises from the monopolistic aspects of the entity and the nature of the business in which it is engaged.  State regulation is provided to protect members of the public from disparate treatment in the acquisition of an essential good or service.  Accordingly, the public concern with environmental regulation is separate and distinct from the public concern involved in the regulation of public utilities.  Finally, the fact that a business is regulated by a governmental body, including a public utilities commission, is not dispositive of the question of whether that business is a "public utility" for the purpose of former R.C. 519.211.  Rather, such a designation is simply evidence of that status.  McGinnis v. Quest Microwave VII, Inc. (1985), 24 Ohio App.3d 220, 221, 24 OBR 398, 399, 494 N.E.2d 1150, 1151-1152.

In applying these principles to the case at bar, we are astonished at the paucity of the evidence offered by appellant to establish that its landfill should be characterized as a public utility for the purpose of exemption from the local zoning code.  In reviewing the transcript, which consists of seven pages of testimony from McFarland, only one statement, i.e., the landfill is "open to the residents of Ravenna Township," has any relevance to the criteria for qualification as a public utility.  There is no evidence that the services are, in fact, provided to the residents of Ravenna Township indiscriminately and reasonably.  No evidence exists to demonstrate that a substantial part of those residents actually avail themselves of that service.  Indeed, there is no evidence in the record as to the nature of the services provided or of their necessity to township residents.  In sum, appellant failed to present sufficient evidence on those factors essential to a determination of whether an entity can be classified as a public utility.  We note that this finding does not necessarily foreclose the characterization of a privately operated solid waste disposal facility as a public utility.  Under certain demonstrated circumstances, a landfill operation might be deemed as such.  However, we caution the owners and operators of such facilities that public utility status, while exempting these facilities from local zoning restrictions, invites even greater governmental regulation and control than is currently experienced in this industry.

We conclude that, upon the particular facts and circumstances of this case, insufficient evidence was presented to establish that appellant's landfill possesses the attributes of a public utility.4  As a consequence, the landfill is not exempt from local zoning restrictions pursuant to former R.C. 519.211.

The judgment of the court of appeals is affirmed.

                                        Judgment affirmed.

Moyer, C.J., Sweeney, Holmes, Douglas, Wright and Resnick,

JJ., concur.

Melvin L. Resnick, J., of the Sixth Appellate District, sitting for H. Brown, J.

FOOTNOTES:

1  Indus. Gas Co. v. Pub. Util. Comm., supra, at 413, 14 O.O. at 292, 21 N.E.2d at 168.

2  Iowa State Commerce Comm. v. Northern Natural Gas Co. (Iowa 1968), 161 N.W.2d 111, 115.

3  McGinnis v. Quest Microwave VII, Inc. (1985), 24 Ohio App.3d 220, 221, 24 OBR 398, 399, 494 N.E.2d 1150, 1151.

4  Due to this conclusion, we do not reach the question of whether the landfill owner, appellant herein, will be using the acquired parcel for landfill purposes.