[This decision has been published in *Ohio Official Reports* at 95 Ohio St.3d 274.]

TRUSTEES OF WASHINGTON TOWNSHIP, APPELLEES, *v*. DAVIS ET AL.,
APPELLANTS.

[Cite as *Washington Twp*. *Trustees v. Davis*, 2002-Ohio-2123.]

*Townships—Zoning—Limitations on zoning power—Telecommunications towers—Broadcast radio station does not meet the requirements necessary for classification as a public utility for purposes of R.C. 519.211(A), when.*

(Nos. 2001-0847 and 2001-0981—Submitted February 27, 2002—Decided May 15, 2002.)

APPEAL from and CERTIFIED by the Court of Appeals for Pickaway County, No. 00CA28, 2001-Ohio-4058.

———————————

SYLLABUS OF THE COURT

A broadcast radio station does not meet the requirements necessary for classification as a public utility for purposes of R.C. 519.211(A) when it can demonstrate only that it holds an FCC license and that its broadcast is available to the public in a given community on an indiscriminate basis.

———————————

COOK, J.

{¶1} R.C. 519.211(A) provides public utilities with a general exemption from township zoning regulations. In an effort to attain that exemption, appellants urge this court to categorize broadcast radio stations as public utilities. Based upon our review of R.C. 519.211 and our prior decisions, we consider such a classification to be unwarranted in this circumstance and therefore affirm the appellate court's judgment.

{¶2} Appellant Citicasters Company ("Citicasters") operates an AM radio station in Columbus, Ohio, sending its signal from Columbus by microwave to its transmission tower in Obetz. Its broadcast is accessible to all listeners in the coverage area.

{¶3} Citicasters holds a Federal Communications Commission ("FCC") license to operate its broadcast station that is statutorily conditioned upon Citicasters' compliance with certain technical requirements and adherence to certain programming regulations. Section 312(a)(4), Title 47, U.S.Code; see, generally, Section 310 et seq., Title 47, U.S.Code. Citicasters alone determines the content of its broadcast subject to these statutes and associated regulations.

{¶4} In an effort to increase its coverage area, Citicasters leased property in Washington Township from appellant, Kenneth Davis, with the intention of building eight new transmission towers. After construction began, appellees, the Washington Township Trustees (the "township"), petitioned the Pickaway County Court of Common Pleas to issue a permanent injunction to prevent any further construction on the towers and to require Citicasters to remove all existing structures. Citicasters' construction of these towers, the township contended, violated local zoning regulations. Appellants (Citicasters, Kenneth Davis, and Clear Channel Communications, Inc., hereinafter collectively, "Citicasters") responded that Citicasters is exempt from compliance with zoning ordinances as a public utility.

{¶5} The cause proceeded to trial to determine whether Citicasters was indeed a public utility and therefore exempt from the township's zoning requirements. The trial court ruled that the radio station was not a public utility and that in any event, even if it were, R.C. 519.211(B)(4)(a) provided the township with the authority to prohibit construction of the towers. On that basis, the court permanently enjoined Citicasters from further construction and required the

2

removal of all existing structures that violate the Washington Township Zoning Resolution.

{¶6} Citicasters appealed the trial court's decision to the Fourth District Court of Appeals, which affirmed the trial court on the basis that Citicasters was not a public utility. In so doing, the court recognized its disagreement with the Tenth District Court of Appeals' decision in *Collins v. Swackhamer* (1991), 75 Ohio App.3d 831, 600 N.E.2d 1079, which held that an entity seeking to build an FM radio tower met the definition of a public utility. The appellate court declined to address the issue of whether Washington Township was authorized to restrictively zone the tower under R.C. 519.211(B), as it considered that issue moot based upon its holding that Citicasters was not a public utility.

{¶7} Citicasters moved to certify a conflict between the Tenth and Fourth Districts on the issue of whether a radio station is a public utility for purposes of R.C. 519.211(A). The Fourth District certified the conflict, and the cause is now before this court upon our determination that a conflict exists (case No. 01-981) and the allowance of a discretionary appeal (case No. 01-847).

{¶8} Resolution of this controversy rests upon the meaning of the term "public utility" for purposes of the zoning exemption contained in R.C. 519.211(A). Because the General Assembly chose not to define that term with respect to R.C. 519.211, this court has routinely employed a multifactored test to determine whether an entity qualifies as a public utility. See, generally, *A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees* (1992), 64 Ohio St.3d 385, 596 N.E.2d 423. Citicasters contends that in addition to the multifactored test, the language of R.C. 519.211(A) and (B) mandates public utility status for broadcast radio stations.

{¶9} R.C. 519.211(A) sets forth the zoning exemption for public utilities, stating: "Except as otherwise provided in division (B) or (C) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any board of

township trustees or board of zoning appeals in respect to the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use, or enlargement of any buildings or structures of any public utility or railroad, whether publicly or privately owned, or the use of land by any public utility or railroad, for the operation of its business."

{¶10} R.C. 519.211(B)(2) contains the following limitation on the exemption, allowing township zoning of certain telecommunications towers owned or used by public utilities: "Sections 519.02 to 519.25 of the Revised Code confer power on a board of township trustees or board of zoning appeals with respect to the location, erection, construction, reconstruction, change, alteration, removal, or enlargement of a telecommunications tower * * *." "Telecommunications tower" is defined in part as the "free-standing or attached structure * * * proposed to be owned or principally used by a public utility engaged in the provision of telecommunications services." R.C. 519.211(B)(1)(b).

{¶11} Presenting a rather circular argument, it is Citicasters' position that the language of R.C. 519.211(A), when read in conjunction with R.C. 519.211(B), requires its categorization as a public utility. Specifically, Citicasters insists that because the General Assembly carved out telecommunications towers from the public utility zoning exemption, *all* users of telecommunications towers must be public utilities. Treating the terms "telecommunications provider" and "users of telecommunications towers" interchangeably, Citicasters claims, "[T]elecommunications providers (those that employ 'telecommunications towers') are otherwise regarded as public utilities (otherwise the exemption in R.C. §519.211(B) would be meaningless)." Citicasters then describes itself as a user of telecommunications towers and argues that it must be considered a public utility.

{¶12} We reject this proposition, however, as not only circular, but contrary to the language of the statute. Clearly, the "telecommunications towers" exception in R.C. 519.211(B) recognizes that *some* public utilities will use telecommunication

towers to provide service. But we find no basis in that language to say that *all* users of such towers are ipso facto public utilities. Furthermore, in defining "telecommunications towers," R.C. 519.211(B)(1)(b) specifically limits those towers that fall within its scope to those that are "owned or principally used by a *public utility.*" This provision contradicts Citicasters' argument, as the General Assembly would not have provided this limitation had it believed that all users of such towers were necessarily public utilities.

{¶13} We also reject Citicasters' contention that *Campanelli v. AT & T Wireless Serv., Inc.* (1999), 85 Ohio St.3d 103, 706 N.E.2d 1267, offers support for its reading of R.C. 519.211. In *Campanelli,* the court determined that AT & T Wireless and Ameritech Wireless, both wireless telecommunications providers, were public utilities for purposes of the zoning exemption in R.C. 519.211(A).

{¶14} Citicasters, however, contends that the *Campanelli* decision necessarily categorized all wireless telecommunications providers as public utilities. In so arguing, Citicasters focuses upon the following statement: "By enacting R.C. 519.211, the General Assembly obviously intended to include wireless telecommunications providers within the scope of the statute, while providing a limited number of circumstances in which township zoning boards may regulate the construction of telecommunications towers." Id., 85 Ohio St.3d at 105, 706 N.E.2d 1267.

{¶15} The statement at issue, however, when viewed in context, did not create a category of public utilities under R.C. 519.211, but was instead part of the court's response to an argument that *no* wireless telecommunications provider could *ever* be a public utility. With that statement, the court demonstrated only that the General Assembly had intended to include some providers of wireless telecommunications technology *within the scope* of the statute, and that such providers *could be* public utilities for purposes of R.C. 519.211(A). The court then properly proceeded to analyze the nature of the services provided by those

5

companies, using the multifactored test established in prior case law.  We disagree with Citicasters, therefore, that *Campanelli* categorized all telecommunications providers as public utilities pursuant to the statutory language of R.C. 519.211.[1]

{¶16} Having so rejected Citicasters' statutory argument, we turn now to the multifactored analysis established in *A & B Refuse*, supra*.* To determine "public utility" status for purposes of the R.C. 519.211(A) exemption, we require "a consideration of several factors related to the 'public service' and 'public concern' characteristics of a public utility.  While the definition of a 'public utility' is a flexible one, the entity must provide evidence that it possesses certain attributes associated with public utilities or its claim to that status must fail."  Id.*,* 64 Ohio St.3d 385, 596 N.E.2d 423, syllabus; *Campanelli,* 85 Ohio St.3d at 106, 706 N.E.2d 1267.

{¶17} An entity must first demonstrate what is often considered the most important attribute of a public utility, "a devotion of an essential good or service to the general public which has a legal right to demand or receive this good or service." *A & B Refuse*, 64 Ohio St.3d at 387, 596 N.E.2d 423.  Associated with this public service requirement, the entity must demonstrate that it provides its good or service to the public "indiscriminately and reasonably."  Id.

{¶18} The entity must also show that it "conducts its operations in such a manner as to be a matter of public concern."  Id. at 388, 596 N.E.2d 423.  Factors considered for this purpose are goods or services provided, competition in the local marketplace, and the existence and degree of regulation by governmental authority. Id.

---

1.  After claiming that all users of telecommunications towers, *i.e.,* all telecommunications providers, are public utilities under R.C. 519.211(A), Citicasters expends considerable effort arguing that it is, in fact, a provider of "telecommunications services" in order to benefit from its own statutory analysis.  That issue, however, is irrelevant to this determination, as we have rejected Citicasters' R.C. 519.211 analysis and ruled that the language of that section does not render a telecommunications provider or a telecommunications tower user a public utility as a matter of law.

**{¶19}** Applying these factors to the radio broadcast station before us, we identify very few characteristics that would qualify it as a public utility. We do acknowledge that the broadcast is available to the listening community indiscriminately—that is, all interested listeners with radios may receive the broadcast within the station's coverage area. But, as in *A & B Refuse*, there is no evidence of the extent to which the community actually avails itself of that service. Id. at 390, 596 N.E.2d 423.

**{¶20}** We also recognize that Citicasters, as an FCC license holder, is charged with serving the "public interest, convenience and necessity." Section 309(a), Title 47, U.S.Code. We disagree, however, that this charge is tantamount to operating as a "matter of public concern." Nor do we accept the significance that Citicasters would have us place upon the programming and technical requirements associated with the license. While governmental regulation is one factor to be considered in the public utility analysis, that factor alone does not render an entity a public utility.

**{¶21}** Courts in other jurisdictions, in fact, limit the importance placed upon FCC licensing with respect to the public utility inquiry. In *Mammina v. Cortlandt Zoning Bd. of Appeals* (1981), 110 Misc.2d 534, 442 N.Y.S.2d 689, a New York court rejected a radio station's reliance upon FCC licensing to prove public utility status. As that court explained: "The basis and nature of such regulation [do] not parallel [those] of businesses ordinarily accepted as public utilities." Id. at 537, 442 N.Y.S.2d 689. Likewise, a Pennsylvania court in *Pennsylvania Pub. Util. Comm. v. WVCH Communications, Inc.* (1976), 23 Pa.Cmwlth. 292, 297, 351 A.2d 328, declined to label a radio broadcasting station a public utility, observing that "[t]he fact that WVCH serves the public interest and is regulated to some extent by the FCC does not make it a 'public utility corporation.' "

**{¶22}** Beyond these factors, we observe minimal evidence that Citicasters possesses attributes typical of a public utility. Most notably, the service provided

by Citicasters cannot be considered essential to the general public. One cannot equate the importance of this radio broadcasting service (which consists of a self-determined format intermixed with commercial advertising) with the essential nature of services provided by traditional public utilities such as electricity, gas, and local telephone services. See *Mammina,* 110 Misc.2d at 536, 442 N.Y.S.2d 689 (noting that the significant feature of a public utility is the vital services it provides and refusing to accord a radio station such status).

{¶23} Also noteworthy is the fact that the public has no right to demand or receive radio services, as it cannot require a radio station to serve its market or to broadcast in any particular format. Moreover, Citicasters presented no evidence beyond its FCC licensing to demonstrate that its operations are conducted as a matter of public concern.

{¶24} Based on all of the foregoing, we conclude that Citicasters lacks the necessary characteristics to categorize it as a public utility within the meaning of the statute. Accordingly, we hold that a broadcast radio station does not meet the requirements necessary for classification as a public utility for purposes of R.C. 519.211(A) when it can demonstrate only that it holds an FCC license and that its broadcast is available to the public in a given community on an indiscriminate basis.

{¶25} The judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

_____

Taft, Stettinius & Hollister L.L.P., R. Joseph Parker, John B. Nalbandian and David L. Johnson, for appellants.

P. Eugene Long II, Pickaway County Prosecuting Attorney, and Judy C. Wolford, Assistant Prosecuting Attorney, for appellees.

Linda F. Holmes, Wood County Assistant Prosecuting Attorney, urging affirmance for amicus curiae Ohio Prosecuting Attorneys' Association.

_____