RUMPKE SANITARY LANDFILL, INC., ET AL., APPELLEES, *v.* COLERAIN
TOWNSHIP ET AL., APPELLANTS.
[Cite as *Rumpke Sanitary Landfill, Inc. v. Colerain Twp.*,
134 Ohio St.3d 93, 2012-Ohio-3914.]

*Zoning—Public utilities' exemption from township zoning—R.C. 519.211—*
*Factors for determining status as public utility.*

(No. 2011-0181—Submitted February 7, 2012—Decided September 5, 2012.)

APPEAL from the Court of Appeals for Hamilton County, No. C-090223.

_____

SYLLABUS OF THE COURT

A privately owned sanitary landfill cannot be a common-law public utility exempt
from township zoning when there is no public regulation or oversight of
its rates and charges, no statutory or regulatory requirement that all solid
waste delivered to the landfill be accepted for disposal, and no right of the
public to demand and receive its services.

_____

O'CONNOR, C.J.

{¶ 1} In this appeal, we decide whether a private sanitary landfill is a
public utility that is exempt from township zoning regulations pursuant to R.C.
519.211. For the reasons set forth below, we hold that a private sanitary landfill is
not a public utility and is therefore subject to township zoning regulations.
Accordingly, we reverse the judgment of the court of appeals and remand the
cause to the trial court for trial.

BACKGROUND

{¶ 2} Appellant Colerain Township is a governmental entity in Hamilton
County, Ohio, with all the rights, privileges, and duties imposed upon it by R.C.

Title 5. Appellant Colerain Township Board of Trustees, through the elected trustees Bernard A. Feideldey, Keith N. Corman, and Jeff Ritter, is the legislative administrative body responsible for governing Colerain Township under R.C. Title 5. Colerain Township and the Colerain Township Board of Trustees (collectively, "Colerain Township") adopted a set of zoning regulations for the township, which are embodied in the Colerain Township Zoning Resolution.

{¶ 3} Appellee Rumpke Sanitary Landfill, Inc., and its subsidiaries operate a sanitary landfill in Colerain Township. Rumpke, along with appellees Charles and John Stoeppel as trustees and Claire Stepaniak, are the owners of the disputed property, approximately 350 acres located between Hughes Road, Interstate 275, and Buell Road in Colerain Township.

{¶ 4} The present action is not the parties' first dispute regarding zoning of Rumpke's property. Rumpke also owns adjacent property used for the disposal of household and commercial waste. In 1999, Rumpke and others who are not parties to the present litigation applied for a change in zoning of the adjacent property. The Colerain Township Board of Trustees rejected the recommendation of the Colerain Township Zoning Commission to approve the application. Rumpke filed a lawsuit against Colerain Township contesting the constitutionality of the zoning and claiming damages. The case was settled by an agreed judgment entry and consent decree.

{¶ 5} In March 2006, Rumpke applied to change the existing zoning of the disputed property so that Rumpke could expand its landfill. The Hamilton County Regional Planning Commission recommended the rezoning requested by Rumpke, but the Colerain Township Zoning Commission recommended that the Colerain Township Board of Trustees deny the proposed rezoning. Following public hearings, Colerain Township denied Rumpke's application.

{¶ 6} After Colerain Township denied the application, Rumpke filed a complaint against Colerain Township, the Colerain Township Board of Trustees,

and the individual township trustees for a declaratory judgment, compensation for the unconstitutional taking of property, and mandamus. Rumpke later amended its complaint to request a declaratory judgment that it "is a public utility and under R.C. 519.211, the operation of * * * [its] existing landfill and its proposed expansion * * * are not subject to Colerain Township's zoning authority."

{¶ 7}   Both Colerain Township and Rumpke filed motions for summary judgment on the issue of whether Rumpke is a public utility exempt from zoning. The trial court granted summary judgment in favor of Rumpke, holding that "Rumpke Sanitary Landfill is a public utility, not subject to the zoning restrictions of Colerain Township, Ohio."

{¶ 8}   On April 1, 2009, Colerain Township appealed to the First District Court of Appeals. Colerain Township argued on appeal that the trial court had improperly granted summary judgment in favor of Rumpke because a privately owned sanitary landfill is not a public utility under R.C. 519.211.

{¶ 9}   The First District held:

"As a general rule, Ohio law provides that townships have no power under the zoning laws to regulate the location, erection, or construction of any buildings or structures of any public utility." [*Symmes Twp. Bd. of Trustees v. Smyth*, 87 Ohio St.3d 549, 551, 721 N.E.2d 1057 (2000).] R.C. 519.211 was "intended to exempt public utilities providers from regulation by township zoning boards and boards of zoning appeals." [*Campanelli v. AT&T Wireless Servs., Inc.*, 85 Ohio St.3d 103, 107, 706 N.E.2d 1267 (1999).] The "exemption ensures that public utilities will be able to construct the facilities required to serve the public interest across the state without undue interference from township zoning resolutions." [*Symmes* at 556.]

*Rumpke Sanitary Landfill, Inc. v. Colerain Twp.*, 1st Dist. No. C-090223, at 3.

**{¶ 10}** The First District then analyzed whether Rumpke was a public utility. In doing so, it held, " 'To determine "public utility" status for purposes of the R.C. 519.211(A) exemption,' a court must consider the ' "factors related to the 'public service' and 'public concern' characteristics of a public utility." ' " *Id.,* quoting *Trustees of Washington Twp. v. Davis*, 95 Ohio St.3d 274, 2002-Ohio-2123, 767 N.E.2d 261, ¶ 16, quoting *A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees*, 64 Ohio St.3d 385, 596 N.E.2d 423 (1992), syllabus.

**{¶ 11}** The appellate court then set forth the factors under both the "public service" and "public concern" prongs. It held:

> The factors relating to the public-service requirement include a demonstration that the entity provides "an essential good or service to the general public which has a legal right to demand or receive this good or service." [*A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees,* 64 Ohio St.3d at 387, 596 N.E.2d 423.] The entity must also demonstrate that it provides its service to the public "indiscriminately and reasonably." [*Id.*] And the provider must have an obligation to provide the good or service that cannot be arbitrarily or unreasonably withdrawn.
>
> Next the public utility must "conduct its operations in such a manner as to be a matter of public concern." [*Id.* at 388.] Factors considered in reaching this determination include the nature of the services provided, competition in the local marketplace, and regulation by a government authority.

(Footnotes and citations omitted.) *Id.* at 3-4.

{¶ 12} The First District then analyzed whether Rumpke is a public utility under both prongs and held:

> [N]o genuine issues of material fact remain as to whether (1) Rumpke provides virtually all residents and businesses of Southwest Ohio a vital and essential service—the sanitary disposal of solid wastes in a facility licensed under R.C. Chapter 3734; (2) Rumpke operates in a monopolistic position with no other cost-effective alternative to its services; (3) Rumpke is legally required to dispose of all of the city of Cincinnati's solid waste; (4) Rumpke has pledged, in sworn statements to the Hamilton County Solid Waste Management District and the Ohio Environmental Protection Agency, that it will remain open and will accept any qualifying solid waste so long as it has the capacity to do so; and (5) the disposal of solid waste is an essential public necessity.

*Id*. at 4. The court of appeals agreed with the trial court and held that "Rumpke was entitled to the trial court's declaration that it is a public utility for purposes of R.C. 519.211." *Id*.

{¶ 13} The First District also addressed Colerain Township's argument that "the trial court erred in denying its motion for summary judgment because the plain language of the amended public-utility statute prohibits a privately owned landfill like Rumpke from benefiting from the regulatory exemptions of a public utility." *Id*. at 5. "Am.Sub.H.B. No. 562, the 2009–2010 biennial budget bill, * * * modified the statutory definition of 'public utility' to exclude 'a person that owns or operates a solid waste facility or a solid waste transfer facility, other than a publicly owned solid waste facility or a publicly owned solid waste transfer

facility.' " *Id*. at 3, quoting R.C. 519.211(A). The appellate court noted that it had previously "declared that the Am.Sub.H.B. No. 562 modifications to R.C. 519.211" "violated the one-subject rule of Section 15(D), Article II, Ohio Constitution" and therefore are "unconstitutional and not enforceable." *Id*. at 3 and 5, citing *Rumpke Sanitary Landfill, Inc. v. State*, 184 Ohio App.3d 135, 2009-Ohio-4888, 919 N.E.2d 826, at ¶18.

{¶ 14} (Colerain Township had appealed that decision to this court, and we accepted discretionary review only of the following proposition of law: "A township is an interested and necessary party to a constitutional challenge brought by a property owner within the township's jurisdiction to a law passed by the General Assembly that directly affects the township's police powers over that owner's property and pending litigation." *Rumpke Sanitary Landfill, Inc. v. State*, 128 Ohio St.3d 41, 2010-Ohio-6037, 941 N.E.2d 1161, ¶ 9. We ultimately held that Colerain Township was "not a necessary party to a constitutional challenge to the bill premised on a violation of the one-subject rule of the Ohio Constitution." *Id*. at ¶ 21. The issue before us was not whether the amendments to R.C. 519.211 violated the one-subject rule.)

{¶ 15} The First District affirmed the judgment of the trial court denying Colerain Township's motion for summary judgment by relying heavily upon the fact that this court had not reversed its holding that the amendments to R.C. 519.211 were unconstitutional and not enforceable. The court of appeals wrote, "Absent reversal by the Ohio Supreme Court, we will apply this decision in each case submitted for our review." But again, the appellate court's holding of procedural unconstitutionality based on the one-subject rule had not been presented to us, and we did not rule on that issue. Our decision in *Rumpke Sanitary Landfill, Inc. v. State* is controlling authority on the issue of whether the township was a necessary party but not on the constitutional issues previously addressed by the First District.

**{¶ 16}** We accepted the cause as a discretionary appeal. *Rumpke Sanitary Landfill v. Colerain Twp.*, 129 Ohio St.3d 1425, 2011-Ohio-3710, 951 N.E.2d 88. Two propositions of law are before us:

> (1) A private sanitary landfill is not exempt from township zoning regulations under the comprehensive statutory framework of solid waste disposal and township zoning.

> (2) A privately owned sanitary landfill cannot be a common law "public utility" exempt from township zoning when there is no public regulation or oversight of its rates and charges, no statutory or regulatory requirement that all solid waste delivered to the landfill be accepted for disposal, and no right of the public to demand and receive its services.

## ANALYSIS

*The Definition of "Public Utility" Has Been Developed Through Case Law*

**{¶ 17}** R.C. 519.211(A), which sets forth limitations on zoning powers, provides:

> Except as otherwise provided in division (B) or (C) of this section, sections 519.02 to 519.25 of the Revised Code confer no power on any board of township trustees or board of zoning appeals in respect to the location, erection, construction, reconstruction, change, alteration, maintenance, removal, use, or enlargement of any buildings or structures of any public utility or railroad, whether publicly or privately owned, or the use of land by any public utility or railroad, for the operation of its business. As used in this division, "public utility" does not include a person that

owns or operates a solid waste facility or a solid waste transfer facility, other than a publicly owned solid waste facility or a publicly owned solid waste transfer facility, that has been issued a permit under Chapter 3734. of the Revised Code or a construction and demolition debris facility that has been issued a permit under Chapter 3714. of the Revised Code.

{¶ 18} Although the General Assembly exempted public utilities from zoning restrictions, it did not define "public utility" insofar as it relates to R.C. 519.211. This court's jurisprudence, however, offers guidance as to what constitutes a public utility for purposes of R.C. 519.211. *Marano v. Gibbs*, 45 Ohio St.3d 310, 544 N.E.2d 635 (1989); *A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees*, 64 Ohio St.3d 385, 596 N.E.2d 423 (1992).

{¶ 19} In *Marano v. Gibbs*, we held that "the determination of entities as public utilities is a mixed question of law and fact." *Marano v. Gibbs* at 311. "[I]n determining public utility status" courts must examine "the character of the business in which the entity is engaged." *Id*., citing *Ohio Power Co. v. Attica*, 23 Ohio St.2d 37, 41, 261 N.E.2d 123 (1970). " ' To constitute a "public utility," the devotion to public use must be of such character that the product and service is available to the public generally and indiscriminately or there must be the acceptance by the utility of public franchises or calling to its aid the police power of the state.' " *Id*., quoting *S. Ohio Power Co. v. Pub. Util. Comm.*, 110 Ohio St. 246, 143 N.E. 700 (1924).

{¶ 20} We set forth two factors, i.e., public concern and public service, which must be taken into consideration to determine whether an entity is a public utility for purposes of R.C. 519.211. "[A]n entity may be characterized as a public utility if the nature of its operation is a matter of public concern, and membership is indiscriminately and reasonably made available to the general

public," otherwise known as public service. *Marano*, 45 Ohio St.3d at 311, 544 N.E.2d 635.

**{¶ 21}** We further developed the definition of "public utility" in *A & B Refuse Disposers, Inc. v. Ravenna Twp. Bd. of Trustees*. A & B Refuse Disposers, Inc. operated a landfill in Ravenna Township, Portage County. A & B Refuse acquired a 66-acre parcel of land adjacent to the landfill intending to construct a truck terminal and offices. After discussing the proposed use with township officials, A & B Refuse was advised that the proposed use would probably not be approved for rezoning. A & B Refuse filed a declaratory-judgment action against the Ravenna Township Board of Trustees, asking for a determination of whether its landfill operation was subject to regulation under the township zoning code.

**{¶ 22}** We were faced with a similar issue to that before us today: "whether the definition of a 'public utility,' as expressed in case law, is applicable to [A & B Refuse's] landfill operation for the purpose of exemption from township zoning restrictions." *A & B Refuse*, 64 Ohio St.3d at 386, 596 N.E.2d 423. To resolve this question, we turned to *Marano* and affirmed the definition of "public utility." We also significantly expanded upon the two factors identified in *Marano*, holding that "the determination of whether a particular entity is a public utility for the purpose of exemption from local zoning restrictions requires a consideration of several factors related to the 'public service' and 'public concern' characteristics of a public utility." *Id*. at 389.

**{¶ 23}** As for the public-service factor, we held that we must look at whether there

> is a devotion of an essential good or service to the general public
> which has a legal right to demand or receive this good or service.
> *S. Ohio Power Co. v. Pub. Util. Comm.* (1924), 110 Ohio St. 246,

252, 143 N.E. 700, 701, quoting *Allen v. RR. Comm. of California* (1918), 179 Cal. 68, 175 P. 466; *Freight, Inc. v. Northfield Ctr. Bd. of Twp. Trustees* (1958), 107 Ohio App. 288, 292-293, 8 O.O.2d 212, 215, 158 N.E.2d 537, 540; *Motor Cargo v. Richfield Bd. of Twp. Trustees* (1953), 67 Ohio Law Abs. 315, 318, 52 O.O. 257, 258, 117 N.E.2d 224, 226. See, generally, 2 Anderson, American Law of Zoning (3 Ed.1986) 568, Section 12.32. * * * [T]he entity must * * * provide its good or service to the public indiscriminately and reasonably. *Marano v. Gibbs,* [45 Ohio St.3d] at 311, 544 N.E.2d at 636. * * * Further, this attribute requires an obligation to provide the good or service which cannot be arbitrarily or unreasonably withdrawn.

*A & B Refuse,* 64 Ohio St.3d at 389, 596 N.E.2d 423. "The fact that a private business provides a good or service associated with the usual subject matter of a public utility does not give rise to a presumption that it is devoted to public service." *Id.*, citing *S. Ohio Power Co. v. Pub. Util. Comm.*, 110 Ohio St. 246, 143 N.E. 700 (1924), paragraph one of the syllabus.

{¶ 24} As for the public-concern factor, we held:

Normally, a public utility occupies a monopolistic or ogopolistic [sic] position in the marketplace. *Greater Fremont, Inc. v. Fremont* (N.D.Ohio 1968), 302 F.Supp. 652, 664-665. See, also, *Mammina v. Cortlandt Zoning Bd. of Appeals* (1981), 110 Misc.2d 534, 442 N.Y.S.2d 689, 691. This position gives rise to a public concern for the indiscriminate treatment of that portion of the public which needs and pays for the vital good or service offered by the entity. Factors utilized in determining whether an enterprise

conducts itself in such a way as to become a matter of public concern include the good or service provided, competition in the local marketplace, and regulation by governmental authority. * * * [N]one of these factors is controlling. Nevertheless, in a case where the business enterprise serves such a substantial part of the public that its rates, charges and methods of operation become a public concern, it can be characterized as a public utility. *Indus. Gas Co. v. Pub. Util. Comm., supra*, 135 Ohio St. [408] at 414, 21 N.E.2d [166] at 168 [1939].

(Citations and footnotes omitted.) *Id*. at 388.

{¶ 25} We further held that "the determination of public utility status requires a flexible rule, a rule which often intertwines the factors considered in relation to the concepts of 'public service' and 'public concern.' " *Id*. Furthermore, a simple claim that a business's services are open to the public does not automatically categorize the business as a public utility. *Id*. at 389. Such a holding would incorrectly encompass as public utilities "traditional private business enterprises which are, in various degrees, regulated by diverse public authorities, *e.g.*, dry cleaners, restaurants, and grocery stores." *Id*.

{¶ 26} We also determined that the business claiming public-utility status bears the burden of offering sufficient evidence on these factors. *Id*.

{¶ 27} Applying the principles set forth above, we held that A & B Refuse "failed to present sufficient evidence on those factors essential to a determination of whether an entity can be classified as a public utility." *Id*. at 390. The only evidence that related to the public-utility factors was a single statement that "the landfill is 'open to the residents of Ravenna Township.' " *Id*. Thus, we never reached the question of whether a "privately operated solid waste disposal

facility" could be a public utility pursuant to R.C. 519.211. *Id.* We now turn to that question.

### *Rumpke, in Its Operation of a Private Sanitary Landfill, Is Not a Public Utility, Because There Is a Lack of Governmental Regulation over the Public-Service and Public-Concern Factors*

{¶ 28} The interesting question of whether a *private* sanitary landfill can be a *public* utility answers itself, especially in light of the fact that no governmental body regulates private sanitary landfills on those factors that make an entity a public utility.

{¶ 29} In *A & B Refuse Disposers*, we cautioned owners of sanitary landfills that although achieving public-utility status would exempt the sanitary landfills from local zoning restrictions, obtaining public-utility status also "invites even greater governmental regulation and control than is currently experienced in this industry." *A & B Refuse Disposers, Inc.*, 64 Ohio St.3d at 390, 596 N.E.2d 423. Here, there is no such control, as there is with traditional public utilities.

{¶ 30} As a private sanitary-landfill operator, Rumpke is subject primarily to the regulations of the Ohio Environmental Protection Agency ("OEPA") pursuant to R.C. Chapter 3734 as well as the local solid-waste regulator, the Hamilton County Recycling and Solid Waste District ("HCRSWD") pursuant to R.C. Chapters 3734 and 343. The concerns of the OEPA are related to the "adverse environmental effects related to the collection and disposal of solid waste," and therefore "[t]he rules and regulations promulgated and administered by the Ohio Environmental Protection Agency arise from this public concern and are imposed for the protection of the environment and for human health and safety." *A & B Refuse Disposers*, 64 Ohio St.3d at 389, 596 N.E.2d 423, citing *Families Against Reily/Morgan Sites v. Butler Cty. Bd. of Zoning Appeals*, 56 Ohio App.3d 90, 96, 564 N.E.2d 1113 (12th Dist.1989); *Hulligan v. Columbia Twp. Bd. of Zoning Appeals*, 59 Ohio App.2d 105, 108, 392 N.E.2d 1272 (9th

Dist.1978); *N. Sanitary Landfill, Inc. v. Montgomery Cty. Bd. of Commrs.*, 52 Ohio App.2d 167, 170-171, 369 N.E.2d 17 (2d Dist.1976).

{¶ 31} The HCRSWD has authority over the "[a]cquisition, construction, improvement, enlargement, replacement, maintenance, and operation of solid waste facilities within the district." R.C. 343.011(B)(2). Like the OEPA, the solid-waste-management districts have a major concern for the management of waste. The vision statement of the HCRSWD is as follows: "The District provides ethical environmental leadership to equitably promote the public good through innovative and responsible strategies leading to the management of all waste as a resource that leads to a society that generates zero waste." http://www.hamiltoncountyrecycles.org/index.php?page=vision-statement.

{¶ 32} We have held that "the public concern with environmental regulation is separate and distinct from the public concern involved in the regulation of public utilities." *A & B Refuse Disposers*, 64 Ohio St.3d at 389, 596 N.E.2d 423. Therefore, the public concern of both OEPA and HCRSWD is not the same public concern that is relevant when determining whether an entity is a public utility.

{¶ 33} Still, Rumpke argues that the regulation of its landfill is not limited to environmental protection, but also includes regulations to enjoin, take over, or terminate landfill operations. Rumpke also argues that it is regulated for nuisance and operates under a requirement that the landfill be fully utilized. It asserts that "the General Assembly has provided for regulatory oversight of landfill location, design, operation, permitting, closure and post-closure handling." Although we do not dispute that the landfill is subject to each of the regulations mentioned by Rumpke, none of those are of consequence to our analysis here. Our review is limited to those factors set forth by this court in *A & B Refuse Disposers*.

*Public-Service Factor*

{¶ 34} Turning to the public-service factor, the lack of governmental regulation means that Rumpke determines to whom it provides its service and how or when that service is provided. The general public has no legal right to demand or receive Rumpke's services. Therefore, there is no assurance or guarantee that Rumpke will provide its services to the public indiscriminately and reasonably, nor is there anything preventing Rumpke from arbitrarily or unreasonably withdrawing its services. Rumpke could lawfully close its doors to the public. Furthermore, as a private company, Rumpke has the ability to set its own rates without any governmental oversight. Thus, Rumpke fails to meet the public-service factor of the public-utility test.

*Public-Concern Factor*

{¶ 35} As for the public-concern factor, the parties do not dispute that Rumpke occupies a monopolistic position in the marketplace by collecting the majority of the solid waste generated within Hamilton County. Rumpke also provides an essential service by operating its sanitary landfill and collecting and disposing of solid waste. However, no governmental body, including the OEPA and HCRSWD, regulates the rates or methods of Rumpke. That means that Rumpke may treat discriminately and arbitrarily the portion of the public to whom it provides its services. Because Rumpke dominates such a large portion of the market and provides an essential service but does so without any government oversight or regulation, it is not a public concern.

**CONCLUSION**

{¶ 36} The lack of governmental control over the public-service and public-concern factors in *A & B Refuse Disposers* is critical in determining that Rumpke is not a public utility. Thus, we hold that a privately owned sanitary landfill cannot be a common-law public utility exempt from township zoning when there is no public regulation or oversight of its rates and charges, no

14

statutory or regulatory requirement that all solid waste delivered to the landfill be accepted for disposal, and no right of the public to demand and receive its services.

{¶ 37} For these reasons, we reverse the appellate court's decision affirming the trial court's declaration that Rumpke is a public utility for purposes of R.C. 519.211.  Therefore, we remand the cause to the trial court.

Judgment reversed<br>and cause remanded.

PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Keating, Muething & Klekamp, P.L.L., Joseph L. Trauth Jr., Thomas M. Tepe Jr., Charles M. Miller, and Barrett P. Tullis, for appellees.

Brahm & Cunningham, L.L.C., Catherine A. Cunningham, Richard C. Brahm, and Aaron M. Glasgow; and James E. Reuter, Law Director, Colerain Township, for appellants.

Michael DeWine, Attorney General, Alexandra T. Schimmer, Solicitor General, and Robert C. Moormann and Nicholas J. Bryan, Assistant Attorneys General, urging reversal for amicus curiae state of Ohio.

Eastman & Smith, Ltd., Dirk P. Plessner, Albin Bauer II, and Rene L. Rimelspach, urging reversal for amici curiae Bokescreek Township, Carroll-Columbiana-Harrison Joint Solid Waste Management District, Erie County, Lake Township, Logan County, Lorain County, Medina County, Miami County, Monroe Township, New Russia Township, North Central Ohio Solid Waste Management District, Ottawa-Sandusky-Seneca Joint Solid Waste Management District, Richland Township, and Stark-Tuscarawas-Wayne Joint Solid Waste Management District.

Matthew J. DeTemple, urging reversal for amici curiae Ohio Township Association and Coalition of Large Ohio Urban Townships.

_____